405 So.2d 122 (1981)
BOARD OF EDUCATION OF ITAWAMBA COUNTY, MISSISSIPPI, et al.
v.
Bill LOAGUE, et ux.
No. 52834.
Supreme Court of Mississippi.
October 28, 1981.
*123 Holland, Ray & Upchurch, Robert K. Upchurch, Reed Hillen, Tupelo, Sam M. Reedy, Fulton, for appellants.
Brown & Bishop, T. Victor Bishop, Fulton, for appellees.
Before SMITH, P.J., and BOWLING and HAWKINS, JJ.
SMITH, Presiding Justice, for the court:
Suit was begun by appellee, Bill Loague, joined by his wife, Daisy Loague, in the Chancery Court of Itawamba County, seeking to confirm complainants' title to certain real property, naming as defendant the Board of Education of Itawamba County and its individual members. Defendants answered and filed a cross-bill against complainants, in which exclusive ownership of the land by the County Board of Education of Itawamba County was asserted, and in which respondents and cross-complainants denied that the Loagues had or owned any right to, or interest in, the land in question.
The chancellor, after an extended trial, entered a decree which, in effect, awarded a portion of the land in question to the Loagues, depriving the Itawamba County School Board thereof, and the latter has appealed.
In 1926 the Itawamba County School Board acquired for school purposes by deed a tract of land, (adjacent to property already owned by it on which the main school building was situated), and went into possession of the area now in dispute as the property conveyed to, and acquired by it, under its said deed.
The deed to the county school board was placed into evidence, and, according to surveyors for both parties, it contains a description that will not "close" if followed literally. In deciding the case, the chancellor selected a call of the deed, apparently on the basis that it, (the call) at least, was specific, and decreed that the south line of the school property should be in accordance with it. The deed reads as follows:
Three acres, more or less, in the SW 1/4 of Section 27, Township 9, Range 8 East, described as follows:
Beginning on the North boundary line of said 1/4 31 rods East from the Northwest corner of said 1/4 and running South 31 rods, thence in a northeastern direction or North 54 1/2 degrees East about 30 rods to the Fulton and Mantachie public road, thence North along said road 18 1/2 rods to the North line of said 1/4, thence West 19 and 1/5 rods to the point of beginning.
This would require a substantial reduction of the distance call of "about 30 rods." Moreover, it clearly conflicts with the buildings erected, including the teacher's house (the line thus drawn bisects it), the teacher's garage (the line cuts it off entirely) and the teacher's garden site (partly excluded by the line). Williams v. Chaney, 236 Miss. 702, 112 So.2d 809 (1959), is clearly not in point here. In Williams this Court expressly limited its application to "the particular situation there involved." In the present case the conclusion on the part of the chancellor ignored the fact that in so doing, the south boundary thus established cuts right through the site of the old teacher's home (now removed), cuts off entirely the site of the old teacher's garage, as well as the gravel drive thereto, and cuts through the old teacher's garden site.
It appears that since the school property was acquired in 1926, by the Board of Education, the disputed area has been openly and notoriously used for public school athletics and for outdoor play and other school activities. Moreover, the teacher's home, garage and gravel drive were constructed and used for many years. The lighted athletic field, used by the school and the public, enclosed by a fence, presently occupies a portion of the land.
*124 Under the jurisdiction of the Board of Education after the main school building was closed, the property was placed under a public Board of Custodians in the late 1950's, one of whom was Loague himself until 1978, when he resigned.
Appellee Loague, has no color of title to this property. He asserts, however, that he has always "claimed to own it", although his testimony indicates that his claim does not extend to that part of the property "around the teacher's home." He also fails to specify any occasion when he made this claim of ownership to the Board of Education. He testified that people desiring to hold "mule pullings" on the ground would ask his permission to do so. He seems to admit, however, that, when he was on the board, any of the other board members could have granted permission as well as he.
It is beyond dispute that in one way or another this presently disputed area has been regarded as within the public domain, for years under the custody of the board (or trustees), and, from the late 1950's, as a practical measure, looked after by a public board known as Board of Custodians. It is, and has been for a great many years, in possession of the Itawamba County Board of Education, openly used for public purposes, and substantial sums of public money have been expended upon its improvement.
An analysis of Loague's own testimony seems to indicate that what he is really seeking to do is to establish ownership by adverse possession of a strip of land off of the east side of the school property, which he says is a strip which lies between the present Highway 363 and an old Fulton Mantachie road, no longer in existence. His "acts of ownership" of this strip seems to have consisted mainly in his claim that he "bush hogged" it from time to time, allowed a neighbor or friend to make a garden at some spot or spots on it, and by being asked at various times by people for permission to use it.
As to the location of the "old" road, the chancellor was justified in finding from the evidence:
... Complainants (Appellees) attempted to establish the location of the old road by witnesses who knew it was west of the present road, but they differed as to its exact location. The old road was not established by proof of complainant and the Court cannot speculate as to its location in 1926. (Emphasis added)
We think the evidence that, regardless of the description contained in the 1926 deed to the Board of Education of Itawamba County, the grantee, the Board of Education, considered that there had been conveyed to it, and it had acquired, the property in question, and accordingly entered into possession of it, under claim of ownership as long ago as 1926, and used it for school athletics, playground and other school purposes. There appears to have been no dispute about it until the Loagues made their present claim. Loague, apparently relying upon what he regards as the "weakness" of the Board of Education's title (because of the description in the 1926 deed) claims to have acquired title and to be entitled to dispossess the Board of Education. The evidence, however, which supports his acquisition of title by adverse possession is wholly insufficient to support a finding that he has done so.
Moreover, section 104 of the Mississippi Constitution provides:
Statutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof.
In Gibson v. State Land Commissioner, 374 So.2d 212, 217 (Miss. 1979), complainant filed suit for confirmation of title against the State Land Commissioner, private individuals and Board of School Trustees for Lauderdale County. The Court in that case said:
There being no presumption of lost grant and no written instrument evidencing a claim or color of title in Mrs. Gibson or her predecessors in title to this 80 acres of 16th Section land, Section 29-3-7, Mississippi Code Annotated (1972), (the 25-year adverse possession statute), would not be applicable and could not be invoked against the State.

*125 If there be any conflict between Section 104, Mississippi Constitution of 1890, which provides:
Statutes of limitation in civil causes shall not run against the State, or any subdivision or municipal corporation thereof.
and Section 29-3-7 (we do not think there is any), there would be no question as to which takes precedence.
Our latest pronouncement on this subject was made in Newell v. State, 308 So.2d 71 (Miss. 1975):
We believe no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the constitution and the legislative enactment, the latter must yield. (308 So.2d at 77).
Since admittedly Loague has no color of title and has entirely failed to establish title in himself by adverse possession to any specific area or boundaries to which his "adverse possession" is claimed to have extended (even if the statute of limitations ran against the Itawamba County Board of Education), the chancellor was manifestly wrong in fixing the south boundary of the school property, so as to cut off a portion of it, and in awarding it to Loague.
There is and can be no dispute that the south line of the school property as fixed by the chancellor cuts through the site of original buildings erected by the school board, and excludes other tangible evidences of good faith possession under claim of ownership for more than 21 years. This is true without regard to discrepancies which may have appeared in the board's 1926 deed. The possession by the Board of Education has been open, and has been physically evidenced by erecting buildings upon the land, using it for school athletics and playgrounds and, a highly significant, and perhaps controlling fact, is that the school board constructed a gravel driveway from the highway to the teacher's home and to the teacher's garage, such driveway paralleling a ditch long and generally known as the "school ditch." The construction of this driveway, in the circumstances, must be considered as indisputable physical evidence and demarcation of the extent southward of the land occupied and claimed by the board, and afterward possessed and continuously used for school purposes.
Daniels v. Jordan, 161 Miss. 78, 134 So. 903 (1931), involved a controversy over a strip of land lying between lots belonging to Daniels and Jordan. Daniels claimed that the statutory limitation of ten years had expired and that therefore he had gained title through adverse possession. It is undisputed that Daniels had erected a fence on the lots he had purchased some years prior and he claimed this to be the line between his land and the land purchased by Jordan. The Court found:
On the second proposition, we think the proof clearly shows that Daniels was in possession of the lot, exercising ownership over it, and claiming the right to it from 1915 to the bringing of this suit, which was over ten years after the erection of the fence and the beginning of the acts of ownership over the strip of land involved. It does not matter in such case that the line claimed as being the real line is not, in fact, such, and that the owner believes that he is occupying the land within the calls of his deed. It is the fact of adverse possession and a claim of ownership for the statutory period that confers title, and not the real fact as to the existence of the line, nor does the fact of the payment of taxes by the plaintiff, during this period, on the land by proper description, alter the defendant's rights of adverse possession. Jones v. Gaddis, 67 Miss. 761, 7 So. 489; Greer v. Pickett, 127 Miss. 739, 90 So. 489; Schuler v. McGee, 127 Miss. 873, 90 So. 713; Evans v. Harrison, 130 Miss. 157, 93 So. 737.
... .
We reiterate what this court said in McIntyre v. Harvey, 158 Miss. 16, 128 So. 572, 573: `We think the majority of the courts and the sounder reason hold that there must be something more than a protest to interrupt the running of a claim of right followed by actual users: there must be at least an interruption of *126 the use ... by the opposing person who opposes such claim. Where another is asserting a claim of right and using a passageway under such claim, a party must do something more than merely verbally protest; there must be a physical interruption or a court proceeding or some unequivocable act of ownership which interrupts the exercise of the right claimed and being used by the opposite parties.' (161 Miss. at 84-85, 134 So. at 904).
The overwhelming weight of the evidence requires that the south line of the school property must be so drawn as to parallel and include the former gravel driveway and the "school ditch."
Therefore, in this respect, the decree is reversed, and the description of the school property is amended, based upon and using the scale of the survey and map prepared by Charles R. Fears, Registered Land Surveyor, introduced into evidence by the Itawamba Board of Education, to read as follows:
3 1/2 acres, more or less, in the SW 1/4 of Section 27, Township 9, Range 8 East, described as follows:
Beginning on the North boundary line of said quarter 31 rods East from the Northwest corner of said quarter and running South 31 rods, thence in an easterly direction, about 4 1/2 rods, to a ditch known as the "school ditch", thence along said ditch, about North 62 1/2 degrees East to Hwy. 363, thence North along said highway to the North line of said quarter, thence West to the point of beginning.
Title to the above described land, which includes land lying within the literal calls of the 1926 deed to the School Board of Itawamba County, as well as land adjacent thereto title to which clearly was acquired by said board through adverse possession for longer than 21 years, is quieted and confirmed in the Board of Education of Itawamba County and all right, title, claim and interest therein or thereto of Bill Loague and Daisy Loague, either or both, is cancelled and removed as a cloud upon its title. That being so there is no merit in the cross-appeal.
REVERSED AND DECREE HERE ON DIRECT APPEAL. AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.