513 So.2d 591 (1987)
C.D. PIEPER
v.
Myrna Reynolds PONTIFF.
No. 57186.
Supreme Court of Mississippi.
September 30, 1987.
*592 J.B. Van Slyke, Jr., Hattiesburg, for appellant.
Kent F. Hudson, Hudson & Gamble, Purvis, for appellee.
Before WALKER, C.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
On March 23, 1984, Mrs. Pontiff filed suit in the Chancery Court of Lamar County, Mississippi, to quiet and confirm title and remove clouds on a 35-foot strip of land. Mr. Pieper filed his answer and counterclaim on August 16, 1984, asking that title be confirmed in his name. The cause went to trial on November 21, 1984. After the trial the chancellor took the cause under advisement, rendering an opinion May 1, 1985, holding that Mrs. Pontiff and her predecessors in title had possessed and claimed the real property in contention for more than 40 years. He declared Mrs. Pontiff the owner of the property in controversy and denied the counterclaim of Mr. Pieper. From this judgment Mr. Pieper appeals, assigning as error the following:
I. THE COURT ERRED IN RULING THAT THE APPELLEE AND HER PREDECESSORS IN TITLE POSSESSED AND CLAIMED THE REAL PROPERTY IN CONTENTION ALONG THE NORTH SIDE OF HER TRACT UP TO THE LOCATION OF THE OLD FENCE THAT EXISTED ALONG THE SOUTH BANK OF THE PUBLIC ROAD BETWEEN THE PROPERTY BELONGING TO THE PARTIES HERETOFORE FOR A PERIOD OF MORE THAN 40 YEARS AND THAT THE SAID RULING BY THE COURT WAS NOT IN ACCORD WITH THE WEIGHT OF THE EVIDENCE PRESENTED AT THE TRIAL OF THIS MATTER.
II. THE COURT ERRED IN OVERRULING APPELLANT'S MOTION TO EXCLUDE TESTIMONY AND DISMISS THE LAWSUIT TO CONFIRM AND QUIET TITLE.
III. THE COURT ERRED IN DENYING THE RELIEF REQUESTED IN THE COUNTERCLAIM FILED BY THE APPELLANT.

FACTS
On February 19, 1973, Mrs. Pontiff was conveyed a tract of land by her mother, *593 Mrs. Hazel Reynolds, which was described in the warranty deed as having a northern boundary 289.7 feet along the south margin of a local road which intersects U.S. Highway 11. The land was also described as being located in the southeast quarter of the northwest quarter of Section 3, Township 2 North, Range 14 West, in Lamar County, Mississippi. On April 30, 1980, Mr. Pieper purchased property whose southern boundary was described as the south line of the northeast quarter of the northwest quarter of Section 3, Township 2 North, Range 14 West, in Lamar County, Mississippi. The above two described parcels of land overlap by 35 feet because the public road referred to in Mrs. Pontiff's deed is actually located in the northeast quarter of the northwest quarter and did not lie along the south line of the northeast quarter of the northwest quarter. The dispute as to ownership of this 35-foot strip of land arose when Mrs. Pontiff saw a "for sale" sign posted on the side of the road that she claimed as her property in December of 1982.
At trial Mrs. Pontiff testified that her mother, Mrs. Hazel Reynolds, bought property in 1942 which contains the property deeded to Mrs. Pontiff. Mrs. Reynolds' deed was also in evidence. Mrs. Pontiff also testified that Highway 11 dissects this larger tract of land and that her mother conveyed her, in 1973, the property on the east side of Highway 11, which includes the 35-foot strip now in dispute. Mrs. Pontiff testified that in 1942, on this east side of Highway 11 (the property deeded to her), there were remnants of an old cabin and that her father used the property to pasture his cows. She also testified that this land, including the 35-foot strip, was under fence in order to keep the cows in. She also testified that there was timber on this property, including the 35-foot strip in dispute. Mrs. Pontiff further testified that when she bought the property in 1973, the fence, although in deterioration, was still standing. In 1982, the time the controversy over this 35-foot strip of land arose, the fence was practically all torn down except for some remnants and fence posts.
Mr. Jordan, a certified land surveyor for state-aid roads in the county, testified from the survey which he made of this property in 1973 for Mrs. Pontiff. In his testimony he stated that Mrs. Pontiff's property and Mr. Pieper's property were separated by a fence line and that this fence line ran along the south margin of the county road. He also testified that he had lived in Purvis all of his life and that he had never known anyone else to make use of this disputed property other than the Reynolds since World War II. He testified that the property had always been bounded by a fence or a fence line along the side of the road. He further testified that no one else besides the Reynolds family had ever claimed that 35 feet of property. Finally, he testified that the iron stake which marks the section line was probably placed there by a surveyor hired by Mr. Pieper in 1982, and that, indeed, the north boundary described in Mr. Pieper's deed did not run along the south margin of this road, but was described as being the section line. He speculated that the old fence was originally put up just outside the section line (so that it ran along the road) simply because the road is a natural boundary.
Two other witnesses, long-time residents of the area, testified that the disputed land had always been known as belonging to the Reynolds family, and that the property had been under fence since the early 1940's.
On cross examination of these witnesses, the testimony focused on what use had been made of the land since 1973, when Mrs. Pontiff bought it from her mother. Mrs. Pontiff testified that the land had not been put to any use other than for her and her husband to walk on when they came from Texas to visit her mother. She also testified that they had planted trees on the property and specifically had planted a pear tree, which eventually died, on this 35-foot strip. The other three witnesses testified that, to their knowledge, the land had not been used for gardening, farming, cutting timber, or grazing cattle in the past nine years.
Mr. Pieper did not put on any witnesses of his own, and only offered his deed into *594 evidence to prove the boundary lines of his property. At the end of oral testimony, both sides offered into evidence records of the taxes paid on this property since 1973 up to the present.

DISCUSSION
Mr. Pieper's three assignments of error basically allege the same thing, that the chancellor's ruling was against the weight of the evidence.
This Court's articulated scope of review of a chancellor's findings is that of substantial evidence/manifest error. In Richardson v. Riley, 355 So.2d 667 (Miss. 1978), this Court stated:
It is that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence.
Id. at 668. And again in Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss. 1986), the Court said "[w]e have repeatedly refused to reverse a chancery court's finding of fact where there is any substantial credible evidence which supports it." With these principles in mind, we focus on the issue of adverse possession of the 35-foot strip of property in dispute.
Mr. Pieper incorrectly frames the issue in this case as to adverse possession. He correctly argues that there are six elements necessary to constitute an effective adverse possession claim: (1) under claim of right; (2) actual; (3) open, notorious and visible; (4) exclusive; (5) continuous and uninterrupted for ten years, and (6) peaceful. See e.g., Davis v. Clement, 468 So.2d 58, 62 (Miss. 1985); Gadd v. Stone, 459 So.2d 773, 774 (Miss. 1984); Trotter v. Gaddis, 452 So.2d 453, 456 (Miss. 1984); Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979). However, he incorrectly applies these elements to Mrs. Pontiff rather than to Mrs. Hazel Reynolds, Mrs. Pontiff's mother and predecessor in title. There was testimony throughout the trial that Mrs. Reynolds acquired her property through warranty deed in 1942 and that she and her family used the property deeded to Mrs. Pontiff, including the 35 feet in dispute, to graze cows. The disputed property was under fence for that purpose from 1942 until the mid-1960's, and the fence remained in repair "well enough to keep cattle" until at least 1972 when Mr. Jordan surveyed it. In 1945, in a quiet title action, the chancery court decreed that Mrs. Reynolds' property was bounded by the south margin of the public road. The decree assumed that the south margin of the road and the section line were one and the same. It was not until 1982, when Mr. Pieper hired a survey of the land pursuant to the boundaries set out in his deed, that the discrepancy came to light. Therefore, Mrs. Reynolds claimed the 35-strip from 1945 until she deeded it to Mrs. Pontiff in 1973.
The Reynolds family's use of this property was exclusive and peaceful, continuous for 41 years, actual, open and notorious and under claim of right, according to the evidence offered. In other words, there was much credible evidence that could lead the chancellor to conclude that title to the 35-foot strip of land had vested in Mrs. Hazel Reynolds by adverse possession before 1973, when it was deeded to Mrs. Pontiff.
It is upon the point of discrepancy in the 1945 decree of the chancery court that Mr. Pieper frames his second argument. He alleges that because Mrs. Pontiff's deed from her mother did not set out by legal quarter section that the disputed property was part of the deeded property, Mrs. Pontiff's claim to the property was ineffective. This Court held many years ago, and again more recently, that it does not matter whether land claimed under adverse possession be within or without the "call of the title deeds," Evans v. Harrison, 130 Miss. 157, 163, 93 So. 737, 738 (1922), or that it be in the same quarter section or section as the land lies which is described in the deed. Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979).
Finally, Mr. Pieper argues that the fence around the disputed property has *595 been in disrepair since 1973, during Mrs. Pontiff's claim of right, and that, therefore, the fence was not enough to put anyone on notice that Mrs. Pontiff claimed the property. Again, Mr. Pieper applies the requirements of adverse possession to the wrong title claimant. Mrs. Pontiff's mother gave notice for more than forty years by a fence around the disputed property and by continued use of the property. Once title ripened by adverse possession in Mrs. Reynolds, it is not necessary that the fence be standing, or even in existence, when the suit is filed. Cole at 1048.
Once title to the disputed property ripened in Mrs. Reynolds by adverse possession, and once she conveyed the disputed property to her daughter, Mrs. Pontiff, Mr. Pieper could not divest Mrs. Pontiff of that title unless he adversely possessed against her, which he does not claim to have done. Trotter v. Gaddis, 452 So.2d at 458. The chancellor did not err in quieting title to the disputed property in Mrs. Pontiff and dismissing Mr. Pieper's counterclaim.
Finding no error, we affirm the chancellor's order confirming and quieting title in Myrna Reynolds Pontiff.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.