558 So.2d 858 (1990)
John R. STALLINGS and Wife, Carol Stallings
v.
David BAILEY.
No. 07-CA-59318.
Supreme Court of Mississippi.
March 14, 1990.
*859 J. Kirkham Povall, Jacobs Eddins Povall Meador & Crump, Cleveland, for appellants.
W. Allen Pepper, Jr., Cleveland, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from a bitter contest over a sliver of land separating the backyards of two residential lots in Cleveland, Mississippi. The Chancery Court held the non-record titleholder had adversely possessed the narrow strip, after going the extra mile to be certain that it had correctly found the on-the-ground location of an outcome determinative fence. By reason of established limitations upon our scope of review, we affirm.

II.
At issue is ownership of a north-south strip of land lying in Block 12 of the College Heights Addition to the City of Cleveland, Mississippi. The strip is 108.5 feet in length and 6.75 feet in width. It divides a rental lot owned by David Bailey from the homestead of John R. Stallings and Carol Stallings. Bailey owns a portion of Lot 6 and the Stallings own a portion of Lot 7. Record title to the disputed strip is vested in the Stallings. See Appendix 1.
Bailey's tenant set off this border skirmish by building a dog pen at the rear of Bailey's property in 1985. Robert Stallings notified Bailey that he intended to remove the existing fence. Bailey responded by putting up a fence of his own that "kissed" the existing fence. Stallings later tore down both fences and erected a new fence between six and seven feet toward Lot 6 on the surveyable boundary line between the two lots.
On February 2, 1987, Bailey commenced this civil action by filing his complaint in the Chancery Court of Bolivar County, Mississippi, Second Judicial District, seeking confirmation of his title to the disputed territory. The Stallings counterclaimed and sought like relief. At trial it developed that from at least 1945 continuously through 1970 a fence separated the two lots and that the predecessors in title of today's litigants recognized the fence line as the true boundary. Much of the trial was centered on locating this old fence line on the ground, for the fence has long since been destroyed. In the end, the Chancery Court held that the old fence line lay approximately 6.75 feet onto Lot 7 and confirmed title in Bailey to the property, record title to which was vested in the Stallings.
The Stallings now appeal.

III.
The Stallings argue that the Chancery Court erred when it denied their motion to dismiss made at the conclusion of Bailey's case. See Rule 41(b), Miss.R. Civ.P. The Chancery Court denied the motion and, because thereafter the Stallings went forward with proof of their own, they have waived the right to urge error in the denial of that particular motion to dismiss. Of course, the Stallings continue to enjoy the right to challenge the weight or sufficiency of the evidence to sustain the judgment against them, only we consider the point by reference to all evidence in the record and not merely that before the Court at the time of the Stallings' original motion to dismiss. See Clements v. Young, 481 So.2d 263, 268-69 (Miss. 1985); see also 9 C. Wright & A. Miller, Federal Practice and Procedure § 2371 at 221 (1971).
Our substantive starting point is Miss. Code Ann. § 15-1-13 (1972) which provides that

*860 Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title... .
We have previously declared that one asserting a claim of adverse possession must prove by clear and convincing evidence the existence of six elements: possession must be (1) under claim of right; (2) actual; (3) open, notorious and visible; (4) exclusive; (5) continuous and uninterrupted for ten years, and (6) peaceful. Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987); Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Davis v. Clement, 468 So.2d 58, 62 (Miss. 1985); Gadd v. Stone, 459 So.2d 773, 774 (Miss. 1984); Trotter v. Gaddis & McLaurin, Inc., 452 So.2d 453, 456 (Miss. 1984); Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979). Of specific applicability to Bailey's claim is our statement that
[i]f a fence encloses the property for a period of at least ten years, under a claim of adverse possession, title vests in the claimant and possessor, even though the fence was subsequently removed or fell into disrepair.
Roy v. Kayser, 501 So.2d 1110, 1112 (Miss. 1987) (quoting Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979)).
In the case sub judice, two aspects of our law concerning adverse possession are implicated. First is the matter of whether the acts of possession adduced at trial were of sufficient quality and quantity to rise to the level of adverse possession. That the quality and quantity of the acts necessary to establish a claim of adverse possession vary with the characteristics of the land is a well-established principle in our law. See Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Kayser v. Dixon, 309 So.2d 526, 529 (Miss. 1975); McCaughn v. Young, 85 Miss. 277, 292-93, 37 So. 839, 842 (1904). Second is the issue of whether, assuming sufficient acts of possession were asserted by a predecessor in ownership, Bailey may use the prior-in-time adverse possession of his predecessors to maintain his claim to ownership of the disputed property.
On the first issue, Roy v. Kayser is controlling. In Roy, we relied almost exclusively on the continuous, undisturbed existence of a fence for at least fifty-five years. En route to rendering a judgment in favor of the appellant's adverse possession claim, the Court found fencing of property to be a particularly powerful indicator of adverse possession. Roy, 501 So.2d at 1112. Further, to support the recognition accorded that reality, we cited no less than sixteen cases where the existence of a fence helped demonstrate title to land by adverse possession. Id.
The record clearly indicates that from 1945 through 1970 Mrs. Leon Logan  Bailey's predecessor in title  maintained a fence that encroached upon Lot 7 between 6.5 and 7.0 feet. Clearly shown by the record is the fact that Logan used the yard up to the fence and regarded it as her own. The Stallings' predecessors in title to Lot 7 likewise recognized ownership in Logan throughout the twenty-five years.
Three items of factual evidence support the on-the-ground location of the fence some six and a half feet onto the west end of Lot 7. For one thing, two trees standing approximately along this line show old fence wire remnants, suggesting that a fence existed on the location at one time. Second, on August 11, 1970, surveyor, Jimmy Teddor, prepared a survey of the lot and on his field notes reflected a fence 6.5 feet east of the rear lot line of Lot 6. Finally, the 1954 aerial photograph of the Cleveland Heights Addition, about which we will say more below, reflects a fence set back some six and a half feet from what appears to otherwise be the lot line.
Under these facts, Logan's maintenance of the fence and use of the yard were acts sufficient to "fly the flag over the land and put the true owner upon notice that his land [was] held under an adverse claim of ownership." Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 *861 (1943). Certainly, we may not say the Chancery Court's findings of ultimate fact are without a substantial grounding in the evidentiary record before us. Breeden v. Tucker, 533 So.2d 1108 (Miss. 1988); Pieper v. Pontiff, 513 So.2d 591 (Miss. 1987); Johnson v. Black, 469 So.2d 88 (Miss. 1985).
Having established adverse possession in one of Bailey's predecessors in title, the question remains whether Bailey may base his claim on such adverse possession. Our law recognizes that, though the land description in the deed does not include contiguous land adversely possessed by the predecessor in title, one who relies upon a conveyance by deed is not precluded from claiming the adversely possessed land. Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987); Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979). By law, it is as surely conveyed as if it had been described in the deed. Roy, 501 So.2d at 1112.
On these facts, Bailey was able to trace an unbroken chain of title back to Logan. Each of the predecessors in title asserted ownership to the disputed property or each at least did not allow the Stallings to claim the property for such a length of time that they could show repossession of the property.
We have previously encountered the claim that land that has been adversely possessed from the record title owner has subsequently been repossessed. Cole v. Burleson, 375 So.2d 1046, 1049 (Miss. 1979). In this case, the Chancery Court found that after 1970 at most there existed what has been characterized as "scrambling possession," insufficient to divest the owners of Lot 6 of their ownership of the adversely possessed portion of Lot 7. See Roy, 501 So.2d at 1112; Davis v. Clement, 468 So.2d 58, 63 (Miss. 1985); Gadd v. Stone, 459 So.2d 773, 774 (Miss. 1984); Fairley v. Howell, 159 Miss. 668, 674, 131 So. 109, 110 (1930).
As with all of the previously discussed points in this issue, the findings of the Chancery Court are subject to our severely limited substantial evidence/manifest error standard of review. See Savage v. Parrish, 488 So.2d 1342, 1342 (Miss. 1986); Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985). Under such a standard in the case sub judice, the Chancery Court was not manifestly in error in finding that Bailey had established a claim of adverse possession and the Stallings' acts of possession were insufficient to establish they had adversely repossessed the disputed property.

IV.
A postscript.
At trial the Stallings vigorously asserted that the old fence lay on the true lot line. As appears above, this fact has proved outcome determinative. We would be remiss if we did not note and commend the Chancery Judge, William H. Bizzell, for going the extra mile to assure that he decided this point as best he could. After the parties rested, Judge Bizzell independently searched the aerial photographs of College Heights and found the 1954 photo which shows the fence and substantially confirms his finding as to its location.
More important, Judge Bizzell handled the matter with fairness and propriety. He made known to all parties the photograph he had found. He offered each side full and fair opportunity to comment and to offer other evidence to the point. See Griffith, Mississippi Chancery Practice §§ 595-96 (2d ed. 1950).
Many of today's cynics would think a land line dispute over a six and a half foot sliver of land not worth such an effort. This state is fortunate to have trial judges who recognize that, in the lives of litigants, disputes such as this are a matter of central importance. That these judges are equally concerned with substantive justice and procedural fairness reminds us that we have been twice blessed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ANDERSON, PITTMAN and BLASS, JJ., concur.
SULLIVAN, J., concurs with separate written opinion.
*862 
*863 SULLIVAN, Justice, concurring:
I concur with the result reached by the majority in affirming the decision of the chancellor.
As to the postscript, while I know Chancellor William H. Bizzell to be a dedicated and honorable public servant, I consider it the duty of a chancellor to determine a case on the facts presented to him by the parties and those matters of which he may take judicial notice.
Judge Bizzell's independent factual research after the record was closed did disclose physical evidence that supported his factual determination of the location of the fence line. Chancellor Bizzell scrupulously allowed both parties a full and fair opportunity to comment and offer other evidence on this point. But, it is outside the American Judicial tradition for a trial judge to independently seek factual evidence after both parties have rested. Chancellor Bizzell's actions, while perhaps supported by continental judicial theory, are foreign to our practice and in my opinion, should not be engaged in by the trial judges of this state, nor encouraged by this Court.