611 So.2d 869 (1992)
Joe E. RICE, Jr.
v.
Kenneth E. PRITCHARD.
No. 89-CA-1333.
Supreme Court of Mississippi.
December 10, 1992.
Rehearing Denied February 18, 1993.
James H. Herring, Herring Long & Joiner, Canton, for appellant.
C.R. Montgomery, Montgomery Smith-Vaniz & McGraw, Canton, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
*870 PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, Joe E. Rice, Jr., (hereinafter Rice) appeals from a decision of the Madison County Chancery Court denying his claim of adverse possession of certain land and upholding good and clear record title to the disputed land to the appellee, Kenneth F. Pritchard, (hereinafter Pritchard).
Pritchard filed suit in the Chancery Court to confirm and quiet title to 2.4 acres of Madison County property. Rice claimed that he was the record title owner of the property, and alternatively, even without record title, obtained the property by adverse possession for the statutory period.
The Chancellor found that the property in question was included within the calls of Pritchard's deed. He also found that Rice failed to prove by clear and convincing evidence the elements of adverse possession as required by Miss. Code Ann. § 15-1-13 (1972). On appeal, Rice challenges principally the denial of his adverse possession claim.

II. FACTS
The litigants here own adjoining property, Rice owning land north of Pritchard. The disputed area is 2.4 acres which Rice claims as the southern part of his property and Pritchard claims as the northern part of his property. Rice asserts that he owns the property through adverse possession. Pritchard asserts that Rice's usage of this land was not sufficient to satisfy the requirements of adverse possession. Alternatively, he argues that any possession by Rice has been permissive.
The parties have a common source of title from the Hoy family. Rice bought two acres from Mable Hoy in 1973, and Hoy told him at the time that her southern boundary was located at an old fence line. Hoy testified that "to her personal knowledge, [her family] occupied and possessed the property to the fence since 1880." She knew of no interruption of her family's use during her lifetime. Rice employed Robert Long, a civil engineer and surveyor to mark his southern boundary line. The surveyor testified that after checking the original government surveys, he found a section concrete marker and using Rice's deed[1], located what he thought was Rice's southern boundary. An old fence running east and west was located on this line and Long was satisfied that he had correctly identified Rice's property line. Long testified that he did not draw a plat and that he could not locate the field notes that he made during the survey. Long was the only expert that Rice tendered. In 1973, Rice rebuilt the old fence on the designated southern boundary, and immediately began to use the land to pasture cattle and to store equipment. He also built three or four sheds on the property.
In 1963, G.C. Russell purchased 167 acres of land from Mable Hoy. Although Russell's deed included the disputed property, Hoy testified that she understood the sale to include land only up to the old fence which Rice later rebuilt. Hoy further testified that she and her family possessed the disputed property after the sale to Russell until the 1973 sale to Rice. From 1972 through 1982, Joe Rice, Sr. leased the land purchased by Russell by written lease. The description of the lease covered acreage to the quarter section line and included the disputed property. Joe Rice, Sr. testified, however, that he never used the 200 feet north of the fence rebuilt by his son in 1973.
In 1980, Russell sold his 167 acres of land to the Madridge Company, Pritchard's immediate predecessor in title. In July of 1980, Madridge had the 167 acres surveyed and first learned of the boundary problem. W.W. Bailey, Madridge's general partner, visited Rice and confronted him with the surveyor's finding that Rice was possessing their land. Rice vehemently disputed the boundary, relying on his own surveyor. *871 Bailey testified that he did nothing further toward resolution of the dispute, but gave Rice permission to continue using the disputed 200 feet until he (Bailey) decided to do something with the property. In 1984, Madridge sold to Pritchard, who did not know of the prior dispute. Pritchard had a survey made in 1987 and discovered Rice's adverse possession claim. He subsequently filed this suit in 1988.

III. STATEMENT OF THE ISSUES
Rice's issues on appeal have been condensed as follows:
(1) The chancellor erred in finding that Rice failed to show that he had possession of the property under proper deed.
(2) The chancellor erred in finding that Joe Rice, Jr. failed to establish his ownership by adverse possession.
(3) The chancellor erred in finding that Rice and others used the property in dispute with permission from Pritchard and his predecessors in title.

IV. ANALYSIS

Issue A: Did the chancellor err in finding that Rice did not possess the disputed property under proper deed?
Pritchard presented several expert witnesses in showing that the disputed land was, in fact, within the calls of his deed and not within Rice's. The chancellor ruled for Pritchard, and the evidence supports the chancellor's ruling. This court upholds this finding, but disposition of this case is based on Rice's adverse possession claim.

Issue B: Did the chancellor err in finding that Rice failed to establish adverse possession?

1. Law
In Miss. Code Ann. § 15-1-13 (1972), the legislature defines adverse possession. The statute states:
Ten years' actual possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title ...
From this statute, a six-element test has been extracted. In a recent decision, Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-1153 (Miss. 1992), this court stated that for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. See also West v. Brewer, 579 So.2d 1261, 1262 (Miss. 1991) (quoting Stallings v. Bailey, 558 So.2d 858, 860 (Miss. 1990)). The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. Thornhill, 594 So.2d at 1153; West, 579 So.2d at 1262; Stallings, 558 So.2d at 860; Martin v. Simmons, 571 So.2d 254, 257 (Miss. 1990).
In Pieper v. Pontiff, 513 So.2d 591 (Miss. 1987). This court stated:
It does not matter whether land claimed under adverse possession be within or without the `call of the title deeds,' Evans v. Harrison, 130 Miss. 157, 163, 93 So. 737, 738 (1922), or that it be in the same quarter section or section as the land lies which is described in the deed. Cole v. Burleson, 375 So.2d 1046, 1048 (Miss. 1979).
Id. at 594.
The question is whether the acts by the adverse possessor are sufficient to "fly his flag" over the land and to put the record title holder on notice that the land is being held under an adverse claim of ownership. Johnson v. Black, 469 So.2d 88, 90-91 (Miss. 1985); Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 (1943).

2. Court's Fact Finding
The chancellor found that Rice failed to meet the requirements of Miss. Code Ann. § 15-1-13 (1972) and this state's case law to prove adverse possession. The chancellor found the lease description of the land leased by Joe Rice, Sr. included the disputed property. Joe Rice, Sr. leased this land from 1972 through January 1982. During *872 this time the chancellor found that there were no land disputes between Rice and his father, as lessee. He concluded that whatever the use of the land in question was, it was with the permission of the landowners because they were leasing the land. Thus, there could be no adverse or hostile claim made by Rice.
The chancellor found that even if the land had not been leased to Rice's father, the acts of Rice, i.e. putting equipment on the land, placing a house on the land for a short time, and constructing a workshed on the property, were not sufficient to show that Rice exercised "the same character of control which he used toward property that was actually his."

3. Analysis
Under this Court's standard of review, a chancellor's findings should be upheld unless it can be shown that his decision is manifestly erroneous. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1984).
There is little question that Rice possessed land which he thought belonged to him. He followed his surveyor's direction, which unfortunately resulted in his occupation of land not specified in his deed. He testified that after Long's survey in 1973, he put a new fence along the southern boundary of the disputed land to take the place of an old existing fence. Rice used the land to house his horses and introduced photographs from 1973 showing the land, the fence, and one of his horses. He produced additional photos of substantial structures and other items that he placed on the disputed property and testified that most of these things had been on the land since at least 1977.
The date on which Pritchard's predecessor in title received a letter from an independent surveying company informing him that Rice was claiming land which he had purchased is not relevant to disposition of this matter. It is also not controlling that the disputed property is not within the calls of Rice's deed. See Pieper v. Pontiff, 513 So.2d at 594. Rice has shown clearly and convincingly through testimony and photographs that from the time he purchased land in 1973, until the time of Pritchard's suit on May 2, 1988, he claimed ownership of the disputed land in an adverse, open, continuous, exclusive, hostile, visible and notorious way and that at no time before Pritchard's suit was there an interruption of Rice's possession. This court must next address the permissive use issue.

Issue C: Did the chancellor err in finding that Rice possessed the land with permission from Pritchard's predecessors in title?
Mississippi cases hold that possession with the permission of the record owner can never ripen into adverse possession until there is a positive assertion of a right hostile to the record owner which is made known to him. See Johnson v. Black, 469 So.2d at 91; Craft v. Thompson, 405 So.2d 128, 130 (Miss. 1981); Eady v. Eady, 362 So.2d 830, 832 (Miss. 1978); St. Regis Pulp and Paper Corp. v. Floyd, 238 So.2d 740, 743 (Miss. 1970). The evidence is clear that Mable Hoy by record description sold the land in dispute to Pritchard's predecessors in title. It is also clear that Pritchard's predecessors in title leased the land in dispute to Joe Rice, Sr., Rice's father. W.W. Bailey, Pritchard's immediate predecessor in title, testified that he went out to the land in dispute to talk to Rice after he received a letter from Lester Engineering informing him that Rice claimed the land for himself. His testimony is as follows:
BY MR. MONTGOMERY:
Q. At any time from '74 up until '84, when you sold the property, did you have an occasion to discuss the property with Mr. Joe Rice, Jr.?
A. [W.W. Bailey]: One time.
Q. Could you tell us when that was and what the circumstances surrounded it, please sir?
A. That was around  between July the third and the 10th of July, 1980.
Q. Okay.
A. I went to his house.
Q. Okay, sir. What, if anything, did you and Mr. Joe Rice, Jr., discuss?
A. Well, I told him that my engineer had informed me that he was encroaching on my property up there, and that I *873 wanted to get the line established straight. And, that I  as far as I knew, the line went to the old section line there between the two little road [sic], which is about ten feet of his house.
Q. Yes, sir. What, if anything, did Mr. Joe Rice, Jr., tell you?
A. He said, "No, the line is down here south of there." And he pointed to a fence down there. He said, "That's the line."
Q. Okay, sir.
A. "Well," I said, "that's not the way I understand it." And that's not what I bought. I bought that land, down to this section line.
Q. Okay, sir. What else was said? How did you leave it with Mr. Joe Rice, Jr.?
A. Well, I went ahead and left him. He wasn't in a mood to correct it at that time. I left it, thinking that after he thought it over, he would no doubt change his mind, knowing that we did buy that property and paid for it, and that he would agree to getting off the property. But I  I didn't want to go to court with him, but I wasn't ready to develop at that time, and I said when I get ready to develop if we haven't settled it, we'll have to settle it in court at that time.
Q. Did you tell him to leave or to get off ...
BY MR. HERRING: We object to leading.
BY MR. MONTGOMERY:
Q. What, if anything, did you tell him [sic] regard to getting off the property or not claiming the property south of his house?
A. Well, I told him I wanted to get it settled; that there was no question about the line being over there at the section line.
Pritchard argues that Bailey's testimony proves that after July, 1980, Rice possessed the land with Bailey's permission. However, the record does not indicate that Rice at any time agreed that Bailey rightfully owned the disputed land. When Rice protested Bailey's claim of ownership, Bailey said that he left Rice alone. Rice and Bailey settled nothing. Pritchard is arguing that if one approaches a possessor and says to him, "I own this land. From now on, if you possess this property then you do so with my permission," then from then on the possession is with permission. In Bd. of Ed. of Itawamba Cty. Miss. v. Loague, 405 So.2d 122 (Miss. 1981), this court stated:
We think the majority of the courts and the sounder reason hold that there must be something more than a protest to interrupt the running of a claim of right followed by actual users: there must be at least an interruption of the use ... by the opposing person who opposes such claim. Where another is asserting a claim of right and using a passageway under such claim, a party must do something more than merely verbally protest; there must be a physical interruption or a court proceeding or some unequivocable act of ownership which interrupts the exercise of the right claimed and being used by the opposite parties.
Id. at 125-126, quoting from Daniels v. Jordan, 161 Miss. 78, 84-85, 134 So. 903, 904 (1931) and McIntyre v. Harvey, 158 Miss. 16, 128 So. 572, 573 (1930). Applying the Loague decision to the case sub judice, this court finds that a more overt act than Bailey's is required to negate Rice's adverse possession and establish that his possession is now with Bailey's permission.
Rice never waivered in his position that he owned the land in dispute, and Pritchard's predecessors in title did nothing to interfere with Rice's possession and claim of ownership of the land. The chancellor's decision is manifestly in error under the facts and is reversed and rendered.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.
NOTES
[1] The land is described in the deed as follows:

All that part of the NE 1/4 SE 1/4 of Section 9, and of NW 1/4 SW 1/4 of Section 10, Township 7 North, Range 2 East, Madison County, Mississippi, which lies east of the public road and south of the centerline of the creek, containing 2 acres, more or less.