# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2001-CA-00192-COA

**AUGUSTINE COTTON; DELORIS MAY; WILLIE M. COTTON; CLENCIE COTTON; DENNIS MACKLIN; RUBY PHILLIPS; JEFFREY MACKLIN AS NEXT FRIEND OF THERESA MACKLIN; MARJORIE MULLINS; BETTY PRICE; VIOLA MORGAN; ALVADIE REDRICK; AND VERNA COTTON**      **APPELLANTS**

**v.**

**CUBA TIMBER COMPANY, INC.**                                                **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 01/10/2001 |
| TRIAL JUDGE: | HON. JOHN C. LOVE JR. |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | WALTER T. ROGERS |
| ATTORNEYS FOR APPELLEE: | JAMES E. LAMBERT |
| | KENNETH BRIDGES |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | JUDGMENT FOR PLAINTIFFS |
| DISPOSITION: | AFFIRMED - 01/29/2002 |
| MOTION FOR REHEARING FILED: | 2/11/2002; denied 4/2/2002 |
| CERTIORARI FILED: | 4/5/2002; granted 5/23/2002; dismissed as improvidently granted 9/5/2002 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., LEE, AND BRANTLEY, JJ.

BRANTLEY, J., FOR THE COURT:

¶1. This appeal arises from a complaint filed by Cuba Timber Company (Cuba) to confirm title of seventy-seven acres of land in Kemper County. Numerous heirs at law of Daniel Cotton (the Cottons) filed a counter-complaint, alleging that they had acquired the subject property by adverse possession. The Kemper County Chancery Court confirmed title in Cuba. Aggrieved, the Cottons appeal arguing that the chancery court erred in failing to grant their motion to dismiss pursuant to Mississippi Rules of Civil Procedure 41(b) and in finding that the Cottons had failed to establish title by adverse possession. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The property in question along with several hundred other acres were owned by Mose Cotton. After Mose Cotton died, the property was divided by partition deed in 1934 among his widow and ten children.

By virtue of this deed, John Cotton received the seventy-seven acres in question. Although the date is not clear, John Cotton left the area in the mid to late 1930s, never to return. In the 1950s John Cotton died leaving his widow, Willie May Humphrey Cotton, his sole heir. At the death of Willie May Humphrey Cotton, her only child, James H. Humphrey, was her sole heir. When James H. Humphrey died, he was survived by his wife and only child. His wife later died, leaving the only child, Ledent Douglas Humphrey, her sole heir. In 1998, Ledent Douglas Humphrey conveyed the seventy-seven acres to Harold Marshall who in turn conveyed the property to Cuba.

¶3. On January 25,1999, Cuba filed a complaint to remove cloud, confirm title and other related relief, naming numerous heirs at law of Mose Cotton as defendants. A default judgment was entered against the defendants on June 15, 1999. However, due to the failure to give the three day notice requirement under Rule 55 of the Mississippi Rules of Civil Procedure, the judgment was set aside as to those defendants that made an appearance. Those defendants were the heirs of Daniel Cotton, John Cotton's brother and Mose Cotton's son. These defendants (the Cottons) filed an answer and counter-complaint alleging that they owned forty acres of the property titled to Cuba by adverse possession. Cuba's title in the remaining thirty-seven acre parcel is not in dispute.

¶4. When Mose Cotton's property was partitioned, Daniel Cotton received forty acres (the northeast quarter of the southwest quarter of Section thirteen, Township nine north, Range seventeen east) to the east of John Cotton's seventy-seven acres (the west half of the southwest quarter of Section thirteen, Township nine north, Range seventeen east, less three acres in the southwest corner of the southwest quarter of the southwest quarter owned by a church). The Cottons claim that after John Cotton left the area (sometime after the partition deed dated 1934), Daniel Cotton began farming approximately five acres of the northwest quarter of the southwest quarter.

¶5. Through the testimony of several children of Daniel Cotton, neighbors and friends, the Cottons set forth evidence of Daniel Cotton's activities on the forty acre parcel. Daniel, his wife and children farmed the property, planting and harvesting crops through the early 1970s. Additional testimony revealed that he cut pulp wood, cross-ties and firewood off the forty-acre parcel during the same period. Tax receipts were entered into evidence that established that the taxes were paid in John Cotton's name up until the mid 1980s, then the receipts show the property being paid in the name of Daniel Cotton. However, no witness could deny whether there ever was any agreement between the two brothers as to Daniel's use of the land. Nor could anyone state whether the money Daniel received from the timber was divided between the brothers. One witness testified that Daniel received the money, but what happened afterwards, no one knew. The property was not used by Daniel after 1980.

¶6. During the trial, the Cottons produced several deeds purporting to show Daniel Cotton's claim of ownership. Daniel Cotton executed a deed, dated January 9, 1977, conveying a fifty foot easement across the southwest quarter of the southwest quarter and the northwest quarter of the southwest quarter of the property titled in John Cotton's name. In September 1980, several siblings of Daniel and John Cotton executed a quitclaim deed of the northwest quarter of the southwest quarter (the forty acres in question) to Daniel Cotton and his wife, Augustine Cotton. A separate quitclaim deed that was executed at the same time deeded the southwest quarter of the southwest quarter (the other thirty seven acres of the property titled in John Cotton's name) to another sibling, Josephine Phillips. However, on March 4, 1987, Daniel and Augustine Cotton (purporting to own the whole seventy-seven acres) deeded the west half of the southwest quarter to a corporation, D & A Cotton, Inc., which was not incorporated until March 18, 1987, rendering

the deed invalid. Daniel and Augustine Cotton deeded the whole seventy-seven acres titled in John Cotton's name even though, seven years earlier they had deeded thirty-seven of those acres to Josephine Phillips.

¶7. The Kemper County chancellor entered a judgment confirming title in Cuba and finding that the Cottons had failed to prove title by adverse possession by clear proof and beyond a reasonable doubt. In addition, the chancellor removed the quitclaim deed executed by some siblings in favor of Daniel and Augustine Cotton and the warranty deed executed by Daniel and Augustine Cotton in favor of D & A Cotton, Inc. as a cloud to Cuba's title. The Cottons now appeal this judgment.

## ANALYSIS OF THE ISSUES PRESENTED

## STANDARD OF REVIEW

¶8. The Cottons made the following assignments of error:

### I. WHETHER THE CHANCELLOR ERRED IN FAILING TO GRANT THE COTTON'S MOTION TO DISMISS PURSUANT TO M.R.C.P. 41(B).

### II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE COTTONS FAILED TO PROVE TITLE THROUGH ADVERSE POSSESSION.

¶9. Our standard for reviewing the decision of a chancellor is well established. "When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied." *Mercier v. Mercier*, 717 So. 2d 304, 306 (¶8) (Miss. 1998) (citations omitted).

¶10. Finding the evidence to support the chancellor's finding, we affirm the chancellor's decision confirming title in Cuba of the disputed forty acre parcel.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE CHANCELLOR ERRED IN FAILING TO GRANT THE COTTON'S MOTION TO DISMISS PURSUANT TO M.R.C.P. 41(B).

¶11. The Cottons' first assignment of error is that the chancellor erred in failing to grant their motion to dismiss pursuant to Mississippi Rule of Civil Procedure 41(b). They argue that Cuba failed to meet its burden in proving its title in the confirmation suit and that the chancellor should have granted their motion to dismiss. However, Cuba argues that it did prove its deraignment of title and that the denial of the motion was proper.

¶12. Once the motion to dismiss under Rule 41(b) was denied, the Cottons proceeded to put on proof for their adverse possession claim. By proceeding with their claim, the Cottons waived any right to appeal whether the chancellor erred in denying their motion. *Stallings v. Bailey*, 558 So. 2d 858, 859 (Miss. 1990). Although the Cottons have waived their right to advance trial court error in denying the motion, they still have "the right to challenge the weight or sufficiency of the evidence to sustain the judgment against them, only we consider the point of reference by all evidence in the record and not merely that before the [c]ourt at the time of the [Cottons'] original motion to dismiss." *Id. See Clements v. Young*, 481 So. 2d

263, 268-69 (Miss. 1985); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2371 at 211 (1971).

¶13. According to Mississippi law, the claimant must prove his title to the property in a suit to remove clouds on title and confirm title. *Culbertson v. Dixie Oil Co.*, 467 So. 2d 952, 954 (Miss. 1985). The chancellor found that Cuba had proven its title by the deraignment of title entered into evidence over the objections by the Cottons, the deeds granting it title and the adoption of the deraignment by the Cottons. The Cottons argue that they did not adopt Cuba's deraignment of title.

¶14. Cuba incorporated by reference in paragraph three of their complaint, an exhibit attached to their complaint which set forth its deraignment of title from the first grant of the property by the United States through the deed granting Cuba title to the property. Within the deraignment is the United States land grant, a chain to deeds through the deed to John Cotton, the claimed heirship of John Cotton to Ledent Douglas Humphrey then the deeds leading to the deed granting Cuba title.

¶15. In paragraph three of the Cottons' answer and counter-complaint, they deny Cuba's deraignment of title as being an incomplete deraignment of title. In addition, paragraph six of their answer and counter-complaint denies the heirship of John Cotton set forth in paragraph six of Cuba's complaint. However, in their counter-claim they adopt the deraignment of title exhibit and incorporate it by reference while adding two additional deeds. An analysis of the record reveals that the Cottons' only true objection to the deraignment of title was that it was incomplete for failing to include those two additional deeds. The chancellor found that these two deeds conveyed nothing and had no effect on Cuba's record title nor deraignment of title. We can find no error in the chancellor's findings.

¶16. The Cottons also argue that the deed executed by Ledent Douglas Humphrey to Harold Marshall and the deed executed by Harold Marshall to Cuba were invalid due to ineffective acknowledgments. Both deeds were signed on April 10, 1998. However, both acknowledgments were dated one year prior, April 10, 1997 by two different notaries. The Court has held that mere clerical errors contained in an acknowledgment will not void the deeds. *Gulf Land and Dev. Co. v. McRaney*, 197 So. 2d 212, 217 (Miss. 1967). Therefore, this argument is without merit. Finding the chancellor did not err in determining that Cuba had proved its deraignment of title, we now turn to the issue of whether the Cottons proved title by adverse possession.

## II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE COTTONS FAILED TO PROVE TITLE THROUGH ADVERSE POSSESSION.

¶17. Although we find that Cuba is the record title holder, the Cottons claim ownership by adverse possession which is outside the record chain of title. The Cottons contend that Daniel Cotton began using the land in the mid 1930s after John Cotton left the state and therefore has acquired the title to the land by adverse possession. Mississippi's adverse possession statute, reads in pertinent part as follows:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title . . . .

Miss. Code Ann. § 15-1-13 (Rev. 1995).

¶18. For possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. *Rice v. Pritchard*, 611 So. 2d 869, 871 (Miss. 1992). The burden of proof is on the adverse possessor to establish by clear and convincing evidence that each element is met. *Id*. However, the court has heightened that burden in dealing with closely related parties. *Georgia Pac. Corp. v. Blalock*, 389 So. 2d 498, 501 (Miss. 1980).

¶19. The ultimate question is whether the possessory acts relied upon by the would be adverse possessor are sufficient enough to place the record title holder on notice that the lands are under an adverse claim of ownership. *Johnson v. Black*, 469 So. 2d 88, 90-91 (Miss. 1985). The Mississippi Supreme Court, in a description of the role of the adverse possessor, has said:

> [A]n adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest". Walter G. Robillard and Lane J. Bouman, *A Treatise on the Law of Surveying and Boundaries*, § 22.08 (5th ed. 1987).

*Blankinship v. Payton*, 605 So. 2d 817, 819-20 (Miss. 1992).

¶20. The chancellor ruled against the Cottons, finding that they did not clearly prove that Daniel Cotton's use of the property was adverse or hostile and under any claim of ownership. In doing so, the chancellor divided the claim of adverse possession into two separate time periods: 1934 (the date of the partition deed) though 1980 (the date of the quitclaim deed which gave color of title to Daniel and Augustine Cotton) and 1980 through 1999 (the date of the warranty deed from Humphrey to Marshall and Marshall to Cuba). Finding this division the most appropriate way to completely analyze the issues, we will do the same.

¶21. First, we will address whether the Cottons proved adverse possession of the property prior to the 1980 quitclaim deed. After the death of Mose Cotton, the heirs, his widow and children agreed to allow the property to be partitioned. To that end, a partition deed was executed dividing the property, signed by all of the heirs which in effect made each heir a grantee and a grantor. From the evidence presented there is no doubt nor dispute that John Cotton left the area and his brother Daniel began to farm a portion of John Cotton's property. In addition, other portions of the disputed forty acres were used by Daniel by cutting pulp wood, cross ties and firewood off of the property.

¶22. The evidence clearly proves that Daniel's use of the property was open, notorious and visible; continuous and uninterrupted for a period of ten years; exclusive; and peaceful. However, the chancellor found that the Cottons failed to clearly prove that Daniel Cotton's use of the property was adverse or hostile and under any claim of ownership.

¶23. As stated above, the property was originally divided between the siblings by a partition deed that in effect made John and Daniel both grantees and grantors. Under Mississippi law, "a grantor may acquire title or right to lands by adverse possession against his grantee if that possession or adverse holding is in such a manner as to notify the grantee of the adverse claim." *Cummings v. Dumas*, 147 Miss. 215, 223, 113 So. 332, 333 (1927). Additionally, the Court has stated that in order to prove adverse possession by a grantor that:

> in any case where the grantor claims by adverse possession all or part of the property conveyed, the

proof of actual notice of the possession by the grantor to the grantee should be stronger than in the normal adverse possession case and should be clear beyond a reasonable doubt.

*Skelton v. Lewis*, 453 So. 2d 703, 707 (Miss. 1984).

¶24. During the testimony, Daniel Cotton's children, neighbors and friends testified that Daniel Cotton farmed and cut timber on the property as if it were his own and paid the taxes. However, no one could state for certain whether John and Daniel had an agreement as to Daniel's use of the property. In addition, tax receipts found in Daniel Cotton's personal effects reflected that the taxes through 1983 were paid in John Cotton's name, not Daniel Cotton. The chancellor found that because the taxes were paid in John Cotton's name, that Daniel did not claim ownership of the property. Under similar facts, the Court has held that paying the taxes in the record title holder's name and mailing the receipts to him, did not meet the requirements to prove claim of ownership under adverse possession. *Georgia Pac. Corp.*, 389 So. 2d at 501. Although, there is no evidence that Daniel Cotton mailed the tax receipts to his brother, John Cotton, we still find that the Cottons failed to prove a claim of ownership by Daniel Cotton through 1980.

¶25. However, in 1980, several siblings executed a quitclaim deed in favor of Daniel and Augustine Cotton. Although, the deed is ineffective as to actually transferring title to the property because the siblings did not have any interest to transfer, the deed does create a color of title to the property in Daniel and Augustine Cotton. From 1983 until 1999, the taxes were paid in the name of Daniel Cotton. However, as the chancellor found and the evidence revealed, the property was not used by Daniel Cotton or any of his heirs after the early 1970s. Therefore, the Cottons failed to prove all the elements required to claim title by adverse possession after 1980.

¶26. We find that the Cottons failed to prove all of the elements to claim the property by adverse possession during any continuous ten year period. Although, each element was met during the 1930s through the present time, all of the elements did not co-exist for any ten year period. Therefore, we find that the chancellor did not err in finding that the Cottons failed to prove title by adverse possession and in confirming title in Cuba.

¶27. **THE JUDGMENT OF THE CHANCERY COURT OF KEMPER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANTS.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.**