760 So.2d 6 (1999)
Dixie Runnels STRINGER, Appellant,
v.
R.W. ROBINSON, Dan Patterson and Elaine Patterson, Appellees.
No. 98-CA-00559-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied May 16, 2000.
*7 Samuel E. Farris, Hattiesburg, Attorney for Appellant.
James R. Hayden, Scott Joseph Schwartz, Hattiesburg, Attorney for Appellees.
BEFORE KING, P.J., IRVING, AND THOMAS, JJ.
KING, P.J., for the Court:
¶ 1. Dixie Runnels Stringer ("Stringer") appeals a decision of the Forrest County Chancery Court[1]. The court found that Stringer had failed to establish adverse possession of a tract of land, to which R.W. Robinson ("Robinson"), Elaine Patterson and Dan Patterson (collectively referred to as the Pattersons), held record title. Stringer alleges three errors.
I. THE CHANCELLOR'S FINDING THAT STRINGER HAD FAILED TO ESTABLISH ADVERSE POSSESSION WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE AND THEREBY ERRONEOUS.
II. THE CHANCELLOR ERRED IN FINDING THAT ROBINSON AND THOMPSON HAD A VERBAL AGREEMENT.
III. THE CHANCELLOR ERRED BY DENYING STRINGER ACTUAL AND PUNITIVE DAMAGES, ATTORNEY FEES, AND COURT COSTS.
¶ 2. Elaine Patterson and Dan Patterson allege an additional error.
IV. THE CHANCELLOR ABUSED HIS DISCRETION BY ORDERING DAN PATTERSON AND ELAINE PATTERSON TO SHARE EQUALLY THE COURT COSTS INCURRED.
¶ 3. Finding no error, this Court affirms the decision of the chancellor.

FACTS
¶ 4. This lawsuit concerns the boundary location between adjacent lands located in Forrest County, owned by Stringer and *8 appellees Robinson and the Pattersons. In 1957 Robinson and his wife, Peggy, were conveyed title to a forty acre property by a warranty deed. The Robinson property was adjacent to the property owned by Jasper B. Thompson ("Thompson"). The boundary line ran along the west side of Robinson's property and the east side of Thompson's property. The terrain of the established boundary line consisted of a large eroding area referred to as a "gully."[2] Both Robinson and Thompson maintained cattle on their respective lands.
¶ 5. In 1965 Thompson erected a fence between the adjacent properties to prevent his cattle from crossing to Robinson's land. The fence was built east of the gully on Robinson's property. The fence was erected in this location to avoid the hardship of erecting a fence in the middle of an eroding area. Robinson testified that he had given permission to Thompson to build a fence east of the gully and on his property. Robinson also stated that both he and Thompson agreed that the site of the fence would not establish the boundary line. Robinson moved to Pascagoula in 1967 where he remained until 1992.
¶ 6. In 1972 Thompson conveyed his interest to Stringer and her husband via a warranty deed. Stringer assumed the fence to be the established boundary line between her property and that of the Robinsons. Stringer testified that between 1972 and 1992, she and her husband maintained the fence and engaged in some controlled thinning of timber on the land. Ronald Byrd, a neighbor of Stringer, testified that he recalled Stringer and her husband repairing the fence in 1972. Byrd could not recall any other fence repair projects. Stringer testified that her daughter, Angela Stone ("Stone"), played in the gully as a child. Stringer's husband died in 1981. Thompson died in 1982.
¶ 7. Meanwhile, Robinson was still paying the ad valorem taxes on his property in Forrest County, including the tract of land in dispute. In August 1992, upon his return from Pascagoula, Robinson conveyed the title to eight acres of his property to Elaine and Dan Patterson through a warranty deed. Stringer then shared her boundary line with Robinson and the Pattersons. In November 1992, Robinson and the Pattersons hired Pat Pierce to bulldoze and remove underbrush from an area about 100 feet wide along the east side of the boundary line. Robinson and Dan Patterson then took down the old fence erected by Thompson and erected a new fence along the established boundary line.
¶ 8. Stringer discovered the new fence in December 1992. Stringer then asked Robinson and Dan Patterson to negotiate a settlement to the boundary dispute. They refused. Stringer then filed suit to have the site of the old fence declared the boundary line, claiming adverse possession. The suit also alleged that Robinson and the Pattersons had wilfully trespassed on her land, harvested timber from the gully, and sought actual and punitive damages, and attorney fees.
¶ 9. The suit also named Robinson's wife, Peggy, as a defendant. Peggy Robinson was found to be incompetent; therefore the chancellor appointed a guardian ad litem to represent her interest. The court appointed Allen Flynt to survey the property in dispute. At trial Flynt testified that the total area in dispute was about 0.778 acres, much of which lay in the gully. He also testified that the new fence erected by Robinson and the Pattersons in 1992 corresponded with the property boundaries, as described by the deeds of all three properties.
¶ 10. The chancellor found that Stringer had failed to meet her burden in establishing a claim for adverse possession. The chancellor dismissed Stringer's claim *9 of wilful trespass as it was pendant to her claim of adverse possession. The chancellor also denied Stringer actual and punitive damages, attorney fees and costs. Stringer now appeals to this Court.
¶ 11. The chancellor divided the court costs among all the parties. The court costs consisted of the following: 1) guardian ad litem fee in the amount of one thousand three hundred seventy-three dollars and thirty cents( $1,373.30); 2) a surveyor's fee of two thousand six hundred and forty-eight dollars and seventy five cents ($2,648.75), and, 3) court reporter's fee of two hundred and forty-four dollars ($244). The Pattersons file a cross appeal to this Court on the issue of costs.
¶ 12. This Court will address Stringer's assigned points of error.
I. THE CHANCELLOR'S FINDING THAT STRINGER HAD FAILED TO ESTABLISH ADVERSE POSSESSION TO THE PROPERTY IN QUESTION WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE AND THEREBY ERRONEOUS
II. THE CHANCELLOR ERRED IN FINDING THAT THERE WAS A VERBAL AGREEMENT BETWEEN THOMPSON AND ROBINSON, ALLOWING THOMPSON TO ERECT A FENCE TO THE EAST OF THE BOUNDARY LINE.
¶ 13. Stringer contends that she has been using the land in dispute since 1972 and therefore has acquired the title to the land by adverse possession. Mississippi's adverse possession statute, codified as Miss.Code Ann. § 15-1-13 (Rev.1995), reads in pertinent part as follows:
Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
For possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992). The burden of proof is on the adverse possessor to establish by clear and convincing evidence that each element is met. Id. The ultimate question is whether the possessory acts relied upon by the would be adverse possessor are sufficient enough to place the record title holder on notice that the lands are under an adverse claim of ownership. Johnson v. Black, 469 So.2d 88, 90-91 (Miss.1985).
¶ 14. The Mississippi Supreme Court, in a description of the role of the adverse possessor, has said:
[A]n adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest". Walter G. Robillard and Lane J. Bouman, A Treatise on the Law of Surveying and Boundaries, S 22.08 (5th ed.1987).
Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992).
¶ 15. The chancellor dismissed Stringer's claims of adverse possession, finding that she could not establish a claim of ownership by clear and convincing evidence. Rice, 611 So.2d at 871. We agree.
¶ 16. Stringer testified that she had always regarded the fence as the property line between her property and the Robinson property. Stringer also testified that she had maintained the fence and thinned the timber in the gully. However, Stringer's testimony related to only one fence repair project. Ronald Byrd, Stringer's neighbor, testified that he recalled Stringer and her husband repairing the fence in 1972. Byrd could recall no other fence *10 repair or maintenance projects. Stringer's husband passed away in 1981. Stringer presented no other evidence of maintaining the fence, or doing control thinning on the land after 1981. Stringer testified that she had some goats and horses which ran on the land in dispute, much as Thompson's cattle had, and that the fence contained the animals. Stringer also testified that her daughter as a child played in the gully. Meanwhile, Robinson testified that he had paid the ad valorem taxes on the land in dispute from 1957 until 1992. The chancellor found that Stringer's acts on the land in dispute were insufficient to place Robinson on notice of her hostile intentions.
¶ 17. The application of our standard of review to the chancellor's finding that Stringer had failed to prove her claim of ownership, establishes that there was substantial evidence to support the chancellor's findings. Stringer had failed to "unfurl her flag" and put Robinson on notice that she claimed ownership of the tract of land.
¶ 18. Robinson and the Pattersons argue that Stringer's use of the land was not adverse, rather it was permissive. Robinson testified that he had allowed Thompson, Stringer's predecessor-in-title, to erect the fence east of the gully and on his own land. If possession is permitted by the owner, it cannot be adverse. "Adverse possession is totally inconsistent with that of permissive use." Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1153 (Miss.1992). The chancellor found that Robinson had entered into a verbal agreement with Thompson, allowing Thompson the use of his land. The chancellor relied on Robinson's unrebutted testimony and the actual deeds of the properties in dispute. The 1972 warranty deed conveying Thompson's interest to Stringer described the property in detail. The property description did not include the area in dispute, i.e.,Thompson conveyed to Stringer all his land up to the boundary line. Thompson did not attempt to convey the area leading to the old fence, instead relying on the actual boundary line. The chancellor relied upon this as evidence of permissive use. We agree.
¶ 19. The chancellor sits as a fact-finder in resolving disputes, and "is the sole judge of the credibility of witnesses." Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994); Polk v. Polk, 559 So.2d 1048, 1049 (Miss.1990). Unless the chancellor abused his discretion, committed manifest error, or applied an erroneous legal standard, we are not at liberty to disturb his decision. Rice, 611 So.2d at 871 (Miss.1992); Johnson v. Hinds County, 524 So.2d 947, 956 (Miss.1988). The proof presented at trial shows that there was an agreement between Robinson and Thompson.
¶ 20. Mississippi cases hold that possession with the permission of the record owner can never ripen into adverse possession, until there is a positive assertion of a right hostile to the record owner which is made known to him. See Johnson, 469 So.2d at 91; Craft v. Thompson, 405 So.2d 128, 130 (Miss.1981): Eady v. Eady, 362 So.2d 830, 832 (Miss.1978). It is also well established that "no adverse user can arise from a use permissive in its inception, until a distinct and positive assertion of right." Since Stringer's use of the land in question arises out of the agreement between Thompson and Robinson, Stringer failed to "unfurl" her flag, and take affirmative steps which would have informed Robinson regarding her hostile intentions.
III. THE CHANCELLOR ERRED IN DENYING STRINGER ACTUAL DAMAGES, PUNITIVE DAMAGES, ATTORNEYS' FEES AND COURT COSTS.
¶ 21. Since Stringer failed to prevail on the adverse possession claim, the chancellor dismissed Stringer's claims of willful trespass and harvesting of timber. In his findings of fact and conclusions of law, the chancellor states, "Plaintiff has not acquired the title to the disputed property by *11 adverse possession, and therefore, she is not entitled to punitive damages under a claim for willful trespass or statutory damages for cutting of timber.... Since punitive damages and statutory damages are no longer an issue in this case, this Court finds that neither party is entitled to an award of attorney's fees, but that each party must bear the fees of their respective counsel." This Court agrees.
¶ 22. We now examine the Pattersons' assigned point of error.
IV. THE CHANCELLOR ABUSED HIS DISCRETION BY ORDERING DAN PATTERSON AND ELAINE PATTERSON TO SHARE EQUALLY IN ALL COURT COSTS INCURRED IN THE PROCEEDINGS.
¶ 23. The chancellor divided the court costs among all parties. The costs included the following expenses:

Land Surveyor's fee $2,648.75
Guardian Ad Litem fee $1,373.30
Court Reporter's fee $ 200.00

¶ 24. The Pattersons argue that the chancellor was manifestly in error by ordering all parties to share the costs equally. The Pattersons specifically argue that they should not be made to pay the guardian ad litem fees as this fee was expended on behalf of Robinson's wife. We disagree.
¶ 25. Mississippi Rule of Civil Procedure17(d) particularly specifies that the fees of the guardian ad litem are to be considered as part of costs of an action. The Rule states the following:
Whenever a guardian ad litem shall be necessary, the court in which the action is pending shall appoint an attorney to serve in that capacity. In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the costs in such action.
Miss. R. Civ. P. 17(d). Pursuant to Miss. R. Civ. P. 54(d), the chancellor has the discretion to assess costs among the parties. This rule, in pertinent part, reads as follows: "Except when express provision therefor is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs ...". M.R. C.. P. 54(d).
¶ 26. The chancellor in his order states that "although the law and facts weigh against the Plaintiff in this matter, the Defendants could have ameliorated the situation by other means, such as filing an action to remove cloud upon the title to the disputed property, rather than abruptly erecting a fence on the land with such obvious sentimental value to the Plaintiff." The chancellor reviewed the record and the testimony of witnesses in reaching his decision. Being mindful of the standard of review which we must follow, we find that the chancellor's decision to divide costs among all parties was not manifest error. Rice, 611 So.2d at 871; Johnson v. Hinds County, 524 So.2d 947, 956 (Miss.1988).
¶ 27. For the foregoing reasons we affirm the decision of the court below.
¶ 28. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] This case was originally assigned to Chancellor Robby Taylor, who heard the first half of the trial. Chancellor Taylor passed away prior to the conclusion of the trial. The case was then assigned to Chancellor Johnny Williams, who heard the second half of the trial.
[2] Stringer described this gully as a huge area of erosion in which "you could probably put this courthouse."