KING, C.J.,
 

 for the Court.
 

 ¶ 1. Barbara Patton Webb, Melvin Eugene Johnson, and Floyd Michael Johnson (collectively the Pattons) appeal from the judgment the Chancery Court of Lafayette County in which the chancellor found that John Bill (John) and Glenda J. Drewrey (collectively the Drewreys) acquired title to thirteen acres of the Pattons’ land by adverse possession. The Pattons raise one issue on appeal — whether the chancellor erred by finding that the Drewreys acquired the disputed property by adverse possession. We find no error and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. The Pattons, residents of Houston, Texas, inherited two tracts of land in Lafayette County that were split by County Road 277. The northwest tract contained approximately 6.83 acres, and the northeast tract contained approximately 6.22 acres. On September 20, 2004, the Dre-wreys, adjoining landowners, filed a complaint to quiet and conform title to the two tracts, claiming that they acquired the land by adverse possession.
 

 ¶ 3. Robert McCain testified that he surveyed the Drewreys’ property in June 2004. David, the Drewreys’ son, showed McCain what he assumed were the boundaries of his parents’ property. However, McCain found that the property claimed by the Drewreys was not consistent with the property description contained in the deed. After doing a title search, McCain
 
 *1081
 
 found that the disputed property belonged to the Pattons.
 

 ¶ 4. Members of the Drewrey family testified that them uncle, Ed Drewrey, acquired the adjoining property in 1952. Unde Ed died in 1970, and Leon Drewrey inherited the property. Leon later sold the property to his brother John in 1979. John lived in Huntsville, Alabama during the majority of the time that he and his wife owned the property. However, he visited two or three times a month. The Drewreys moved back to Lafayette County in 1999.
 

 ¶ 5. The Drewreys testified that there was an old fence on the property, which had fallen in disrepair. However, remnants of the fence remained embedded in several trees located north of the disputed property. Uncle Ed told everyone that the fence was the northern boundary line of his property. Since the disputed property was located south of the fence, the Drewreys always believed that it was a part of their property.
 

 ¶ 6. The Drewreys cut firewood, cut and sold timber, and bushhogged on their property. However, the Drewreys rarely cut timber off of the disputed property because there were not any trees fit to be used as timber on that land. Members of the Patton family also cut firewood and timber and bushhogged on their own property. However, the Drewreys testified that the Pattons only conducted these activities north of the fence line.
 

 ¶ 7. The Drewreys also allowed a group of hunters to hunt and to build two cabins on the disputed property. In 1961, Uncle Ed sold an acre of the disputed property to the hunters, and they built a cabin on the west side of County Road 277. In 1981, John allowed the hunters to build another cabin on the disputed property, and it was located on the east side of the road. The Drewreys simply asked the hunters to watch over the land for them.
 

 ¶8. The Drewreys maintained that no one else exerted any claim over the disputed property until 1986. Izetta Patton testified that in 1986, the Pattons sent the Drewreys a letter, asking them to remove the hunting cabins from their property. She also testified that she and Floyd posted “no trespassing” signs on the property from 1995 to 1997. Herbert Patton, Izet-ta’s son, testified that he drove by the property at least three times a week. He admitted seeing the hunters on the Pat-tons’ property. However, Herbert did not confront the hunters regarding their trespassing.
 

 ¶ 9. The Pattons testified that they paid the taxes on the disputed property and claimed this was proof of their ownership of the land. Izetta also testified that her father marked the boundaries of the Pat-tons’ property by nailing car tags to trees located on the property. The Drewreys testified that one of the car tags was nailed on a tree near the fence line.
 

 ¶ 10. The chancellor found that the Drewreys proved by clear and convincing evidence that they and their predecessors in title had acquired the disputed property by adverse possession. Aggrieved, the Pattons timely filed this appeal.
 

 ANALYSIS
 

 ¶ 11. In a bench trial, the chancellor is the finder of fact and, thus, solely determines the credibility of witnesses and the weight to give to the evidence.
 
 See Stringer v. Robinson,
 
 760 So.2d 6,10 (¶19) (Miss.Ct.App.1999) (citations omitted). This Court gives great deference to a chancellor’s findings of fact.
 
 Buford v. Logue,
 
 832 So.2d 594, 600 (¶14) (Miss.Ct.App.2002) (citing
 
 Pace v. Owens,
 
 511 So.2d 489, 492 (Miss.1987)). Therefore, we will not disturb the findings of a chancellor
 
 *1082
 
 when supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.
 
 Stringer,
 
 760 So.2d at 10 (¶19) (citations omitted).
 

 ¶ 12. Mississippi Code Annotated section 15-1-13(1) (Rev.2003) provides the following:
 

 Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
 

 Thus, the party claiming adverse possession must prove by clear and convincing evidence that his/her possession was “(1) under a claim of ownership; (2) actual or hostile; (3) open, notorious and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.”
 
 Stringer,
 
 760 So.2d at 9 (¶13) (citing
 
 Rice v. Pritchard,
 
 611 So.2d 869, 871 (Miss.1992)). “The ultimate question is whether the possessory acts relied upon by the would be adverse possessor are sufficient enough to place the record title holder on notice that the lands are under an adverse claim of ownership.”
 
 Id.
 
 (citing
 
 Johnson v. Black,
 
 469 So.2d 88, 90-91 (Miss.1985)).
 

 ¶ 13. The Pattons argue that the Dre-wreys failed to prove adverse possession. The Pattons maintain that the Drewreys cannot claim ownership of the disputed property based on a partial fence, which had fallen in disrepair and was barely visible on the property. The Pattons argue that the mere existence of the fence near the actual boundary line of the property does not establish that the fence was the accepted boundary line. Further, the Pat-tons dispute whether the Drewreys can rely on alleged statements made by deceased relatives as evidence that they acquired the land by adverse possession. The Pattons also contend that the Dre-wreys’ infrequent cutting and clearing of the land are insufficient to establish adverse possession, and the Drewreys cannot rely on the hunters’ actions to prove their claim. The Pattons maintain that they notified the Drewreys that they were the true owners of the disputed property on more than one occasion. Last, the Pattons contend that the fact that they paid taxes on the property proves that they are the rightful owners. Based upon our review of the record, we find that the Drewreys proved all elements of adverse possession by clear and convincing evidence.
 

 1. Under a Claim of Ownership
 

 ¶ 14. The chancellor found that Uncle Ed’s mistaken belief that the fence was the northern boundary line of the Drewreys’ property was sufficient to establish adverse possession. The Pattons complain that the Drewreys should not be allowed to rely on these allegations. However, the chancellor is the finder of fact and determines the credibility of the witnesses.
 
 See Stringer,
 
 760 So.2d at 10 (¶19). We find that there is substantial evidence to support the chancellor’s finding that Uncle Ed claimed ownership of the disputed thirteen acres beginning in 1952 when he acquired the property.
 

 ¶ 15. The Drewreys and one of the hunters testified that Uncle Ed had always told them that the fence was the northern boundary line of the property. Since then, this mistaken belief was passed on to the subsequent owners and the hunters. This evidence shows that the Drewrey family recognized the fence as the northern boundary line of their property for fifty-six
 
 *1083
 
 years before they filed this claim. Mississippi law is clear that adverse possession can be established by the actions of a party’s predecessors in title.
 
 See Wicker v. Harvey,
 
 937 So.2d 983, 993 (¶32) (Miss.Ct.App.2006) (citing
 
 Crowder v. Neal,
 
 100 Miss. 730, 736, 57 So. 1, 3 (1911)). Therefore, we find that Uncle Ed’s claim of ownership of the disputed property is sufficient to establish the Drewreys’ claim of adverse possession of the property.
 

 2. Actual or Hostile
 

 ¶ 16. To prove actual possession, the adverse possessor must show that he exercised control over the disputed property, “evidenced by things visible to the eye or perceptible to the senses.”
 
 Wicker,
 
 937 So.2d at 993-94 (¶34) (quoting
 
 Blankinship v. Payton,
 
 605 So.2d 817, 819-20 (Miss.1992)). That possession is considered hostile when the adverse possessor intends to claim ownership of the land of another although the adverse possessor is under a mistaken belief that the land lies within the description contained in his own deed.
 
 Id.
 
 at 994 (¶34) (citing
 
 Alexander v. Hyland,
 
 214 Miss. 348, 357, 58 So.2d 826, 829 (1952)).
 

 1Í 17. The chancellor found that Uncle Ed once used the land to graze cattle, and the Drewreys cut firewood on the property and bushhogged the land. More important, the Drewreys sold part of the disputed property, allowed hunters to hunt on the land, and allowed the hunters to build two cabins on the disputed property.
 

 ¶ 18. The Pattons argue that the hunting cabins are not sufficient to show that the Drewreys exercised ownership over the property because the Dre-wreys did not build the cabins and do not own the cabins. However, we find that this is of no consequence. “A claimant giving permission to allow another to use the land is a factor weighing in favor of adverse possession.”
 
 Buford,
 
 832 So.2d at 603 (¶23) (citations omitted). By selling the land and by giving others permission to hunt and to build on the land, the Drewreys showed that they actually used the property, and this use was hostile to the Pattons’ ownership. Therefore, we find that there is substantial evidence to support the chancellor’s finding that the Drewreys had actual and hostile possession of the land.
 

 3. Open, Notorious, and Visible
 

 ¶ 19. The mere possession of land is not sufficient to satisfy the requirement that the adverse possessor’s use be open, notorious, and visible.
 
 Wicker,
 
 937 So.2d at 994 (¶35) (citing
 
 Craft v. Thompson,
 
 405 So.2d 128, 130 (Miss.1981)). A claim of adverse possession cannot begin unless the landowner has actual or constructive knowledge that there is an adverse claim against his property.
 
 Scrivener v. Johnson,
 
 861 So.2d 1057, 1059 (¶6) (Miss.Ct.App.2003) (citing
 
 People’s Realty & Dev. Corp. v. Sullivan,
 
 336 So.2d 1304, 1305 (Miss.1976)). “[A]n adverse possessor ‘must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he -will, [know] that an enemy has invaded his domains, and planted the standard of conquest.’ ”
 
 Wicker,
 
 937 So.2d at 994 (¶35) (citing
 
 Blankinship,
 
 605 So.2d at 820).
 

 ¶20. The chancellor found that the Drewreys’ possessory acts were sufficiently open, notorious, and visible and put the Pattons on notice that there was an adverse claim against their property. The Pattons argue that the Drewreys’ infrequent cutting of wood and timber and clearing of the land were not sufficient to put them on notice.
 

 ¶ 21. The evidence is not clear as to how often the Drewreys performed these actions on the disputed property. Howev
 
 *1084
 
 er, we find that the Drewreys did other acts that were sufficient to put the Pattons on notice. The Drewreys allowed hunters to build two cabins on the disputed property, one in 1961 and one in 1981. The Pattons admitted that these cabins were visible from the road. It is clear that the Pattons saw the hunting cabins because they sent a letter to the Drewreys in 1986, asking the Drewreys to remove the cabins. Thus, we find that there is substantial evidence to support the chancellor’s finding that the Drewreys’ possessory acts were sufficiently open, notorious, and visible.
 

 4. Continuous and Uninterrupted for Ten Years
 

 ¶ 22. The Pattons argue that the Drewreys did not adversely possess the property for ten years because they were absentee landowners. However, the chancellor found that the Drewreys’ predecessors in title possessed the property continuously and uninterrupted for ten years. We find that the evidence supports the chancellor’s finding.
 

 ¶ 23. Uncle Ed acquired the property in 1952, and he told the Drewreys and the hunters that the fence was the northern boundary line. Based on the record, the Pattons did not assert their claim of ownership of the disputed property until 1986. So, the Drewreys’ possession of the property was continuous and without interruption from at least 1952 until 1986, well in excess of the ten-year period required by the statute. Thus, we find that there is substantial evidence to support the chancellor’s finding that the Drewreys possessed the property continuously and uninterrupted for ten years.
 

 5. Exclusive
 

 ¶ 24. The Pattons argue that the Drewreys did not exclusively possess the property because the Pattons continuously paid the taxes on the property. Conversely, the Drewreys maintain that they believed that the disputed property was included in them deed, and they paid taxes on their land every year. Thus, the Dre-wreys assumed that they were also paying taxes on the disputed property.
 

 ¶25. In the context of adverse possession, “payment of taxes is simply one incident to possession and whether an adverse possessor has paid property taxes on the land in controversy is not disposi-tive of the claim of ownership.”
 
 Nosser v. Buford,
 
 852 So.2d 57, 61 (¶17) (Miss.Ct.App.2002) (citations omitted). Therefore, we find that the question of whether the Pattons or the Drewreys paid taxes on the disputed property is of no consequence here.
 

 ¶ 26. An adverse possessor must exclude all others from the land except those that he gives permission.
 
 Buford,
 
 832 So.2d at 603 (¶26) (citing
 
 Blankinship,
 
 605 So.2d at 820). Based on the record, the hunters are the only other people besides the Drewreys that have occupied the disputed property, and the Drewreys gave the hunters permission to do so. Therefore, we find that there is substantial evidence to support the chancellor’s finding that the Drewreys possessed the disputed property exclusive to all others.
 

 6.Peaceful
 

 ¶ 27. The Pattons argue that they notified the Drewreys that they were the true owners of the disputed property on more than one occasion, and this negates the peaceful element of the Dre-wreys’ claim. However, the mere existence of a dispute regarding ownership of the land does not present an obstacle to satisfy the peaceful element of adverse possession.
 
 See, e.g., Dieck v. Landry,
 
 796
 
 *1085
 
 So.2d 1004, 1009 (¶15) (Miss.2001). The record clearly shows that the Pattons did not notify the Drewreys until 1986. By this time, the Drewreys had already peacefully possessed the disputed property for a period exceeding ten years. Therefore, we find that the Drewreys satisfied the peaceful element of adverse possession.
 

 CONCLUSION
 

 ¶ 28. We find that there is substantial evidence in the record that supports the chancellor’s finding that the activities of the Drewreys and their predecessors in title were sufficient to establish title to the disputed property by adverse possession. Therefore, we find that the chancellor did not abuse her discretion and affirm the judgment of the chancery court.
 

 ¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.