BARNES, J.,
for the Court:
¶ 1. Jerry Mize filed suit to quiet and confirm the title to his property, which he argues extends slightly south of County Road 206 in Lafayette County, Mississippi. His neighbors to the south counterclaimed, asserting that according to them deeds, they own the property to the centerline of County Road 206, and, even if their deeds are incorrect, they own the land by adverse possession. The chancellor agreed with the neighbors and confirmed their titles. The chancellor also found that Mize acted maliciously in pursuing his claim and awarded attorney’s fees and damages. Mize now appeals, arguing the chancellor was biased and lacked support for his findings. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Mize owns fifty-six acres in Lafayette County north of County Road 206. Westbrook Construction Company of Oxford LLC owns fifty-two acres directly south of Mize’s property. Kay and Jimmy Lewis Jr. (the Lewises), Jimmie Waller (Kay’s mother), and Craig Merrell also own land to the south of Mize’s. The disputed property is a somewhat triangle-shaped piece of land that runs along the south side of County Road 206 for approximately a quarter of a mile and extends approximately four feet to the south on the *355 west side and thirty-five feet to the south on the east side.[1]
¶ 3. The crux of this matter began in the summer of 2007, when Westbrook requested site approval with the Lafayette County Planning Commission for development of a subdivision. Westbrook had purchased the land south of Mize’s property in 2005 with intentions of future development. Mize and several neighbors protested the subdivision.
¶ 4. According to Mize, when he purchased his property in August 2000, he was told by the previous property owner, Estelle Kiger, that his property line extended slightly south of County Road 206. Mize’s ownership of the property south of County Road 206 would cut off access for the proposed subdivision. In October 2007, Mize hired Melvin James Cannatella, a surveyor with W.L. Burle, Engineers P.A., to survey his property. Upon reviewing Mize’s 2000 deed, Cannatella discovered that the property description “did not close” on the south side, meaning there was a gap in the property’s border. Can-natella determined that the only way to close the description was to include County Road 206 and a portion of the land extending south of it. In October 2007, Canna-tella rewrote the property description, and Kiger executed a correction deed to Mize.
¶ 5. On September 18, 2008, Mize filed suit in the Lafayette County Chancery Court against Westbrook, the Lewises, Waller, and Merrell to quiet and confirm his title and to bar the defendants from using his property. Westbrook, the Lew-ises, and Waller answered the complaint and filed counter-complaints.[2] The defendants/counter-claimants alleged that Mize had slandered their titles; they sought to quiet and confirm their own titles.
¶ 6. A hearing was held at which Mize introduced Cannatella’s survey as evidence, and the defendants introduced a survey that they had commissioned by Robert Sealy. Sealy’s survey stated that Mize’s property line stopped at County Road 206. The chancellor found that Sealy’s survey was correct, and, alternatively, that the defendants had proven all the elements of adverse possession. And because the chancellor found Mize acted with malice in pursuing his claim, Mize was ordered to pay $5,687.50 in attorney’s fees and $32,530.05 in damages.
¶ 7. On appeal, Mize asserts the following issues: (1) the chancellor should have recused himself because he had personal knowledge of disputed facts; (2) the chancellor erroneously excluded three deeds from evidence; (3) the defendants did not prove adverse possession; (4) the chancellor erred in awarding attorney’s fees for slander of title; (5) the chancellor erred in awarding Westbrook damages for the lost sale of property; and (6) the chancellor erred in finding Sealy’s testimony more credible than Cannatella’s.
*356 ANALYSIS OF THE ISSUES
1. Chancellor’s Personal Knowledge of the Facts
¶ 8. Mize argues the chancellor should have recused himself because he was familiar with the properties in controversy and had prepared one of the deeds in evidence. Alternatively, Mize argues the chancellor should have disclosed his possible disqualifications on the record and given the parties an opportunity to waive the conflict.
¶ 9. Canon 3E(l)(a)-(b) of the Mississippi Code of Judicial Conduct states:
(1) Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentia-ry facts concerning the proceeding;
(b) the judge served as lawyer in the matter in controversy....
¶ 10. Mize’s first issue arises from the following statement made by the chancellor when giving the opinion of the court: “And I believe Exhibit No. 24, it was a number of lots that were surveyed by Mr. Edward Overall, a surveyor over in Marshall County. And there was a survey made of a—two surveys made for property for a black church. This judge did one of the deeds.” (Emphasis added). The deed, dated May 1996, is signed by the chancellor and describes 2.2 acres in the Northwest Quarter of Section 6.[3] The deed clearly bears the chancellor’s name and signature. No objection or motion for re-cusal was made when the deed was offered into evidence or when the chancellor stated he prepared the deed. The failure to object waived this issue for appeal. See Tubwell v. Grant, 760 So.2d 687, 689 (¶ 8) (Miss.2000) (“Where the party knew of the grounds for the motion [for recusal] or with the exercise of reasonable diligence may have discovered those grounds and where that party does not move timely prior to trial, the point will be deemed waived.”).
¶ 11. Regardless, the deed prepared by the chancellor does not involve the parties or properties in this action, and the contents of the deed are not in controversy. The deed references a stone in a church lot that was recognized as marking the northwest corner of Section 6. There is no dispute as to the location of the northwest corner of Section 6. In fact, Mize’s surveyor, Cannatella, stated in his testimony he used the stone to establish the northwest corner of his survey. Finally, we have carefully reviewed the deeds in evidence, and their descriptions relevant to this case have a point of beginning at the southwest comer of the Northwest Quarter of Section 6. Also, we note that a seventeen-acre tract, labeled tract 26 in Appendix A, lies between the church’s property and Mize’s property; thus, the borders of the church’s property as established in the deed drafted by the chancellor could not possibly encroach Mize’s property. Therefore, the deed prepared by the chancellor is not a matter in controversy. Also, no bias has been shown to have resulted from the chancellor’s work on the deed. Thus, we cannot find that the chancellor should have sua sponte re-cused himself.
¶ 12. Next, Mize argues the chancellor made two statements that revealed *357 he had personal knowledge of hay being baled on the land in question. The first statement was made during closing arguments, when the following exchange occurred:
[MIZE’S COUNSEL]: I don’t think that the Court needs me to run through the elements of adverse possession. I believe the Court is well aware of those, but the Court should consider the fact that the use of the property that now belongs to Mr. Westbrook doesn’t go back but about 2005 — 2005. His claim must extend in a time frame in which the — Mr. Coleman’s own property— Mr. Coleman states he had individuals on the property mow there more than just — more than a month out of a year, and I don’t think that meets—
THE COURT: — No, sir, what Mr. Coleman testified to is that, and I think this Court and the appellate] court realizes when you are not keep[ing] a log book, he said he was on it monthly. He knew at least monthly, other times more than that. He convinced the Court that he used it quite often. You cannot — I’m an old cow man, and when you bale hay, and I noticed that it’s ironic that I’m hearing this case. I can remember when Mr. Coleman had it, and I can remember going out to Bay Springs [Road] and passing by there and noticing each time I would go, there would be less and less round bales of hay out in that open field. Of course, Mr. Coleman’s across the ditch in that big white house and had cows running in front. His testimony was he was there quite a bit. And I think that adverse possession would run back through him. He held it out as being his.
(Emphasis added). The second statement occurred during Coleman’s testimony. When Coleman was describing his property, the chancellor stopped him and said:
“I’m familiar with your property, I guess I passed it maybe a hundred times.”
¶ IB. Mize argues this personal knowledge required recusal under Canon 3E(l)(a). Again, no request for recusal was made, and no bias is alleged because of what the chancellor witnessed on Coleman’s land. It is undisputed that Coleman used the property as a hayfield. Mize confirmed this in his testimony. Thus, we cannot find that the chancellor should have sua sponte recused himself for having knowledge of the area where he lived.
2. Deraignment of Title
¶ 14. At trial, Mize sought to introduce into evidence the deeds of the three prior owners of his property. The defendants objected, arguing the deeds were inadmissible because Mize had not deraigned his title as required by Mississippi Code Annotated section 11-17-35 (Rev.2004). The chancellor agreed, stating: “I don’t know how you [ (Mize) ] are going to get around 11-17-35.” The objection was then sustained. Mize argues the exclusion of the deeds was error.
¶ 15. Section 11-17-35 states:
In bills to confirm title to real estate, and to cancel and remove clouds therefrom, the complainant must set forth in plain and concise language the deraignment of his title. If title has passed out of the sovereign more than seventy-five (75) years prior to the filing of the bill, then the deraignment shall be sufficient if it show title out of the sovereign and a deraignment of title for not less than sixty (60) years prior to the filing of the bill. A mere statement therein that complainant is the real owner of the land shall be insufficient, unless good and valid reason be given why he does not deraign his title. In all such cases, final decrees in the complainant’s favor shall be recorded in the record of deeds, and *358 shall be indexed as if a conveyance of the land from the defendant or each of them, if more than one, to the complainant or complainants, if more than one.
¶ 16. Mize argues the defendants’ objection was improperly granted because it did not go to whether the deeds were admissible as evidence, but, rather, whether Mize’s complaint should be dismissed for failure to state a claim upon which relief could be granted. Mize argues that the failure to state a claim under Mississippi Rule of Civil Procedure 12(b)(6) is an affirmative defense, which the defendants did not pursue and, consequently, waived.
¶ 17. Regardless of the basis of the objection, the prior deeds were not relevant. Mize’s claim did not arise until 2007, when he commissioned the survey by Can-natella and had the correction deed issued. Mize had owned his property since 2000. He did not make a proffer as to what he intended to show in the three deeds, and it does not appear he relied on the deeds to support his argument. When asked by the chancellor if the three deeds contained the same description as the 2000 deed, Mize’s attorney responded: “One of them does— the other two have descriptions that are more general of the western half itself, but it is indeed his chain of title and differing description.... ”
¶ 18. Even if one of the prior deeds gave Mize a claim to the property south of County Road 206, the chancellor ultimately relied on Sealy’s survey, which excluded the land south of this road. Thus, even if it were true that the chancellor erred in excluding the deeds, the error was harmless. This issue is without merit.
8. Adverse Possession
¶ 19. After finding Westbrook’s, the Lewises’, and Waller’s deeds included the land up to the centerline of County Road 206, the chancellor alternatively found the defendants had adversely possessed the property. This finding was important because it supported the chancellor’s award of damages for slander of title — that is, even though Mize had a survey to support his claim, he nonetheless frivolously pursued his claim because the defendants clearly owned the property by adverse possession. Mize argues the chancellor’s finding was in error because the defendants failed to prove adverse possession.
 ¶ 20. Mississippi Code Annotated section 15-1-13(1) (Rev.2012) states:
Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
For possession to be adverse under the statute, it must be “(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Blackburn v. Wong, 904 So.2d 134, 136 (¶ 15) (Miss.2004) (citing Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992)). The claimant bears the burden of proof to show adverse possession by clear and convincing evidence. Id. The chancellor is the fact-finder, but his findings must be supported by substantial evidence, and are reviewed for manifest error. Walker v. Murphree, 722 So.2d 1277, 1280 (¶ 15) (Miss.Ct.App.1998) (citation omitted).
¶ 21. Waller and the Lewises have each owned their respective properties continuously for more than the statu *359 torily required ten years — the Lewises since 1989 and Waller since 1974. West-brook purchased his land in January 2005 from Kenny Coleman, who had owned the property since December 1994. The tacking of years is allowed as long as there is privity of possession between the predecessor and the claimant. Walters v. Rogers, 222 Miss. 182, 186, 75 So.2d 461, 462 (1954). Privity of possession was created when Coleman conveyed title to West-brook; thus, Westbrook is allowed to combine his term of ownership with Coleman’s to meet the statutory time period.
¶ 22. Coleman, Westbrook, the Lewises, and Waller testified that they had used and maintained their properties up to County Road 206 during their ownership. The testimony showed that they mowed grass up to the road, trimmed thorn bushes near the road, treated the land for weeds up to the road, planted flowers along the road and ditch, and cut and baled hay up to the road. Two other witnesses confirmed this regarding the Lewises’ and Waller’s properties. When Kiger was shown a picture of the land south of County Road 206, she recognized it as the Lewises’ and Waller’s yards. Ki-ger denied that she or her family had ever claimed ownership of the land south of County Road 206, and her only recollection of using the south side of the road was when she picked blackberries there as a child “at the top of the hill.” However, the property she referenced at the top of the hill was not part of the disputed property. Further, a nearby property owner, Dray-ton Barnes, who drove past the properties daily, was shown photographs of the properties south of County Road 206 and asked if he recognized to whom the properties belonged. He identified the properties as the Lewises’ and Waller’s.
¶ 23. Waller’s, the Lewises’, and West-brook/Coleman’s possession of their respective properties was actual, exclusive, peaceful, open, notorious, visible, and continuous for ten years. The testimony showed that they came and went from their properties without contest from anyone. Mize argues that this is untrue and counters that he took steps after purchasing his property to show ownership of the land south of County Road 206. Specifically, he testified that he graded and graveled an abandoned access way and placed no-trespassing signs along it. In 2007, prior to commissioning the survey, he built a fence. Admittedly, the fence was outside the boundary of the survey, and was removed by Westbrook. We cannot find these actions were sufficient to defeat the neighbors’ claims of adverse possession.
¶ 24. “[A]n adverse possessor ‘must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see....’” Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992) (quoting Walter G. Robillard & Lane J. Bouman, A Treatise on the Law of Surveying and Boundaries, § 22.08 (5th ed.1987)). Mize’s neighbors have met this burden through the use and maintenance of their properties. We find the chancellor had substantial evidence to support a finding of adverse possession. Thus, this issue is without merit.
4. Slander of Title and Attorney’s Fees
¶ 25. Mize asserts he brought this claim only after contacting a surveyor and having a correction deed issued, and since he had support for his claim, there was no basis for the chancellor’s finding of slander of title or award of attorney’s fees.
¶ 26. “Slander of title ‘may consist of conduct which brings or tends to bring in question the right or title of another to particular property.’ ” Ellison v. Meek, 820 So.2d 730, 738 (¶ 32) (Miss.Ct. App.2002) (quoting Walley v. Hunt, 212 *360 Miss. 294, 304, 54 So.2d 393, 396 (1951)). “One who falsely and maliciously publishes [a] matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages.” Walley, 212 Miss, at 304, 54 So.2d at 396 (citation omitted). Malice may be inferred “by applying common knowledge and human experience to a person’s statements, acts, and the surrounding circumstances.” Phelps v. Clinkscales, 247 So.2d 819, 821 (Miss.1971).
¶ 27. It is undisputed that Mize called into question his neighbors’ titles. Therefore, the only issue to be resolved was whether he did so with malice. The chancellor found that malice could be inferred from Mize’s actions and the circumstances of this case. The chancellor “solely determines the credibility of witnesses and the weight to give to the evidence,” and we give great deference to the chancellor’s findings of fact. Webb v. Drewrey, 4 So.3d 1078, 1081 (¶ 11) (Miss.Ct.App.2009) (citation omitted); see also Bell v. Parker, 563 So.2d 594, 597 (Miss.1990).
¶ 28. First, the chancellor found that because an abundantly clear ease for adverse possession existed, Mize was on notice that he had no claim to the land south of County Road 206, regardless of what Cannatella’s survey or the correction deed said. Rather, as the chancellor stated, Mize “blindly” pursued the claim despite the evidence. Mize has continually argued that he pursued the claim because Kiger led him to believe that he owned the land. However, even if Kiger represented to Mize in 2000 that the land was his, her June 2010 deposition testimony was clearly to the contrary:
Q. Okay. And it’s your testimony that [Waller] always maintained ... the property up to the road?
A. Why, yes, she maintains it up to the road. Somebody does.
Q. But you don’t?
[[Image here]]
A. No. I don’t maintain her yard at all.
[[Image here]]
Q. Well, let me just cut to the chase. Are you saying you own part of [Waller’s] yard?
A. No, I don’t own any part of her yard, as far as I know.
Q. Did your father ever own part of her yard?
A. Not that we know of.
Q. You never intended to convey Ms. Waller’s property to anyone, then, did you?
A. To convey her property to anyone?
Q. Yeah, you didn’t mean to sell her property to somebody or give her property to somebody.
A. Didn’t mean to, no.
Q. I mean, if you never claimed it and you never meant to convey it, did you ever consider it yours or your father’s?
A. No. I never considered it mine.
[[Image here]]
Q. [H]ave you ever claimed [the Lew-ises’] property?
A. No. I never claimed their property.
Q. Did you tell anybody that you owned any of their property?
A. No.
Q. So that was never your intent to sell their property to anyone?
A. No.
¶ 29. Kiger gave consistent testimony as to Walker Downs, the owner of West-brook’s property prior to Coleman, stating that Downs crossed and accessed his property through County Road 206 “all the time.” Further, in relating the account of *361 when she convinced Clark Littlejohn, a since-deceased county supervisor, that the road should be upgraded and taken over by the county, Kiger testified that she insisted to Littlejohn that she wanted any land that had to be taken to be from “my side” of the road — referring to the north side of County Road 206. Kiger later learned that Littlejohn had told the Lew-ises and Waller that Kiger wanted the land south of the road to be taken. Kiger became very upset over this, emphasizing that she had never claimed that land as hers.
¶ 30. Next, during the pendency of this litigation, Mize removed a culvert from the ditch alongside County Road 206, blocking Westbrook’s access to his property. When county personnel attempted to replace the culvert, Mize objected, arguing that he did not want anyone crossing the ditch. West-brook filed for an injunction, to which Mize responded that he was the owner of the property surrounding the culvert, and he removed the culvert out of necessity because it was “rusted and had collapsed and was blocking that ditch[,] forcing water onto the road and onto the remainder of Mize’s property.” Even if Mize removed the culvert out of necessity, this does not explain why, when the county was attempting to replace the culvert, Mize called Lafayette County Road Manager Jerry Hay-nie and told him to stop.
¶31. We find the chancellor correctly inferred malice, as there is no other explanation for Mize’s actions. Having found malice, the chancellor was correct in awarding the Lewises and Waller $5,687.50 in attorney’s fees.[4] This issue is without merit.
5. Damages for Lost Sale of Property
¶ 32. Westbrook testified that he entered into a contract on April 14, 2009, for the sale of approximately thirty acres of his property to Michael Mitchell. West-brook contacted Mize and asked him to withdraw his suit so the sale could proceed without a cloud on the title; alternatively, Westbrook offered Mize the option of purchasing the property. Mize denies knowledge of this, but testified that even if he had known of a pending sale, he would not have withdrawn his claim or purchased the property. Mitchell testified that he was ready, willing, and able to purchase West-brook’s property, but after six months passed without a resolution of Mize’s claim, he chose to purchase property elsewhere. Westbrook testified that in addition to Mitchell, several others had been interested in purchasing the property, but had chosen not to because of the dispute with Mize.
¶ 33. An action for slander of title lies where a person claims ownership of another’s property, “thereby preventing its lease or sale to another.... ” Walley, 212 Miss, at 304, 54 So.2d at 396. “The malicious filing for record of an instrument which is known to be inoperative, and which disparages the title to land, is a false and malicious statement, for which the damages suffered may be recovered.” Id. at 305, 54 So.2d at 396 (citations omitted).
¶ 34. The chancellor found Mize maliciously slandered Westbrook’s title, and this prevented the sale to Mitchell, thus entitling Westbrook to damages. Mize argues that Westbrook’s assertion that he could not sell his land was disingenuous. In support of his argument, Mize cites to a sale that occurred on April 30, 2009, *362 wherein Westbrook sold a portion of his property to Steven M. Shipman, who resold a portion to Merrell. Regardless of that sale, Mitchell’s testimony established that he was willing and able to purchase the property from Westbrook, attempted to do so for six months, and did not complete the purchase because of Mize’s suit. Westbrook testified that he would have netted $176,500 from the sale of the property to Mitchell, and he would have used the proceeds to pay down his loan. The interest he had paid on $176,500 since the date of the planned closing, May 15, 2009, was $32,530.05. The chancellor awarded this amount as damages.
¶ 35. We cannot find that the chancellor abused his discretion in awarding damages due to the lost sale. While the contract with Mitchell predated Kiger’s deposition, which was found to have put Mize on notice he had no claim to the land, we still find that the damages award was justified. The testimony showed a clear case of adverse possession, regardless of what Mize believed Kiger had told him. Damages are appropriate for slander of title where malice lies, and we have found the chancellor did not err in concluding that Mize acted with malice. This issue is without merit.
6. Conflicting Surveys
¶ 36. Finally, Mize argues the chancellor erred in finding Sealy’s survey more credible than Cannatella’s. The chancellor’s finding focused on the landmarks used by the surveyors, and Sealy’s testimony that if Cannatella’s survey was accepted, it would render all other property descriptions in the area incorrect.
¶ 37. The deeds of Waller, the Lewises, and Westbrook (and their predecessors in title) describe their property borders as running “to a point in” County Road 206. Sealy agreed that the border between their and Mize’s properties was County Road 206. However, Cannatella found Mize’s property line ran south of the road. According to Sealy, Cannatella’s finding resulted from the use of incorrect landmarks. Unlike other property descriptions in the area, Cannatella found that a wooden post marked the northeast corner of the Northwest Quarter of Section 6. Sealy and previous surveyors found the northeast-corner marker was a cotton-picker spindle. Sealy testified that the wooden post was not on the north section line, as Cannatella believed, but, rather, twenty-five feet below it. Sealy explained that if one drew a straight line from the northwest corner of the Northwest Quarter, which undisputedly is a stone near a church, to the wooden post on the east corner, it would slope down twenty-five feet, skewing all property descriptions in the area. Sealy testified Cannatella made “all of the ties going to the south,” which explains why Cannatella found Mize’s property line was below County Road 206, while other surveyors found it was in the right-of-way.
¶ 38. Adding to the discrepancy in the two surveys are the measurements of Section 6 from the Government Land Office (GLO). Exhibit 30, which is attached to this opinion as “Appendix B,” is a sketch drawn by Sealy, whereby Sealy converted the GLO’s chain measurements to feet. The sketch shows that Section 6 is an irregular section. A section is normally 5,280 feet wide by 5,280 feet long, making each half section 2,640 feet and each quarter section 1,320 feet. However, Sealy’s sketch shows varying measurements in which the Western Halves of the Northwest and Southwest Quarters are narrower than a time section half. Sealy testified that he reviewed Cannatella’s survey and compared it to the GLO’s survey, and the two did not match.
*363 ¶ 39. Cannatella testified that while he reviewed the GLO’s survey, he did not rely on it. Rather, Cannatella measured the section himself, which resulted in several discrepancies. For example, in establishing the southwest corner of the Northwest Quarter of Section 6, Cannatella took the distance from northwest corner of Section 6 to the southwest corner of Section 6 and divided it in half; the result was a distance of 2,662 feet. However, according to Sealy’s sketch, the distance between the northwest and southwest corners of the Northwest Quarter is 2,640 feet. When asked to explain the twenty-two-foot discrepancy, Cannatella stated that he used monuments rather than the survey to measure the distance because, “[i]n the principles of surveying[,] the monument supercedes distance.”
¶ 40. Not only was Cannatella’s survey inconsistent with the GLO’s survey and neighboring property descriptions, it was also inconsistent with a decree by the Lafayette County Chancery Court in Avent v. Coleman, Cause No. 2001-258-G (Sept. 13, 2002), in which the center point of Section 6, i.e., the southeast corner of the Northwest Quarter, was established. Sealy relied on the point in his survey, while Can-natella did not establish a center point. Cannatella testified that he had not seen the order. When asked about Cannatella’s findings, Sealy again testified that Canna-tella’s entire section line across the southern border of the Northwest Quarter was twenty-five feet too far south.
¶ 41. Since this was a bench trial, it was the chancellor’s duty to weigh the evidence and determine the credibility of the witnesses. See Webb, 4 So.3d at 1081 (¶ 11); Bell, 563 So.2d at 597. Giving deference to the chancellor’s conclusions, we can find no error in the acceptance of Seales testimony. It was consistent with prior land surveys, the surrounding deeds, and the GLO’s survey. This issue is without merit.
¶ 42. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.

Appendix A

*364
Appendix A

[[Image here]]

*365
Appendix B

Appendix B

[[Image here]]

. The land is located within the West Half of the Northwest Quarter of Section 6, Township 8 South, Range 2 West. County Road 206 runs generally east and west within this quarter. The tax assessor's plat depicting the properties in question is attached to this opinion as "Appendix A,” with Mize’s property being referred to as tract 22, Westbrook’s property as tract 38, the Lewises’ property as tract 23, and Waller’s property as tract 24.

. Merrell did not answer the complaint. It appears from the record that Mize and Mer-rell had a side agreement whereby Mize would concede his claim against Merrell if the claims against the other defendants failed. Likewise, if Mize succeeded on his claim against the other defendants, he would succeed on his claim against Merrell. The property claimed by Merrell was approximately thirty feet by ten feet.

. The church’s property is contained within tract 27. See Appendix A.

. Waller and the Lewises were represented by the same attorney, who put on proof that his fees totaled $5,687.50. Westbrook was represented by another attorney, and no evidence was entered of his fees. Thus, no attorney’s fees were awarded to Westbrook.